## MEADOW PARK LAND COMPANY, Appellant, v. SCHOOL DISTRICT OF KANSAS CITY.

**Division One, December 31, 1923.**

1. **CONDEMNATION: Dismissal: Liability for Expenses of Property Owner.** A school district which instituted a proceeding to condemn land for school purposes, and, after prosecuting the proceeding for several months, dismissed and abandoned it, is not liable for the fees of attorneys and other expenses incurred by the landowner in his defense of the proceeding, there being no allegation

that the proceeding was needlessly brought or vexatiously and un-necessarily prolonged.

2. ———: Reference to Other Statutes: Applicable to Manner of Procedure Only. The provision in the statute (Sec. 11428, R. S. 1919) that a school board may condemn land for school purposes "in the same manner" as is provided in certain other statutes for the condemnation of lands by railroads, telegraph and other corporations, refers to the method of procedure only, and cannot be held to impose upon the school district, in case a condemnation proceeding instituted by its board is voluntarily dismissed, the same liability to a land owner which a railroad or other private corporation would incur were it to dismiss a condemnation proceeding. As to the manner of procedure said Section 11428 is a reference statute, but it cannot be held that thereby it was the legislative intention to impose on a public corporation the same liability that the law imposes on a corporation organized for private gain.

3. ———: Dismissal: School District: Liability. A school district is a public corporation, and all its funds are devoted to specific uses, and its power to contract, or to incur liability, is limited and controlled by statute, and it has no authority or liability except such as is expressly granted or necessarily implied in the powers granted; and the statutes do not make a school district liable to a land owner for expenses incurred by him in employing attorneys to defend a condemnation suit instituted by the school district and afterwards dismissed before the commissioners' report is filed. The rule of liability, for counsel fees incurred, of a railroad company, which has abandoned a condemnation proceeding, does not apply to a school district.

4. ———: ———: Pleading: Vested Interest in Putative Award. The petition does not allege that the condemnation proceeding was needlessly brought or vexatiously or unnecessarily prolonged, but it alleges that the commissioners appointed, and instructed by the court according to law, had agreed among themselves as to the amount of damages to be allowed each owner of property to be taken as a school site, amounting in the aggregate to a much larger sum than was anticipated by the school board; that pending the preparation of their report certain directors interfered and so embarrassed the commissioners that they made no report, and that thereafter the school district, without notice to plaintiff, a property owner, dismissed the proceeding; that plaintiff had estimated and claimed $160,000 as the value of its property which was sought to be appropriated, and said commissioners, if not interfered with, would have reported and allowed plaintiff $100,000 as damages; and that plaintiff had incurred an expense of $8000 for services

of attorneys, $127.66 for traveling expenses, and $935 for plats, blue prints, services of its executive officers and other like matters, in defending the condemnation proceeding. *Held*, first, that plaintiff has no vested interest in said unreported sum of $100,000; and, *second*, said petition does not state a cause of action for the recovery of the sums of money so expended by plaintiff in defending the condemnation proceeding so abandoned and dismissed.

Appeal from Jackson Circuit Court.—*Hon. Thad B. Landon,* Judge.

AFFIRMED.

*Scarritt, Jones, Seddon & North* for appellant.

(1) The Legislature in expressly providing that school districts may condemn land for school purposes "in the same manner as provided for condemnation of rights of way in Article 2 of Chapter 13 of the Revised Statutes," made that article, being the general condemnation law, and that article as interpreted and construed by the Supreme Court, a part of the School District Act. R. S. 1919, secs. 11403, 11428; R. S. 1919, secs. 1791 to 1800, being General Railroad Condemnation Act; State v. Peyton, 234 Mo. 517; Gaston v. Lamkin, 115 Mo. 30; Crohn v. Tel. Co., 131 Mo. App. 313; Gray v. Ry. Co., 81 Mo. 126. (2) In every condemnation proceeding founded upon the Railroad Condemnation Act, Art. 2, Chap. 13, being Secs. 1791 to 1800, R. S. 1919, from the time of the enactment of that statute until the present, it has been ruled in the appellate courts that a condemning corporation, by instituting and then discontinuing a condemnation proceeding before the accomplishment of its purpose, is liable to pay the defendant the cash outlay incurred by him in connection with the abandoned proceeding. Railroad v. Lackland, 25 Mo. 515; Railroad v. Reynal, 25 Mo. 534; Leisse v. Railroad, 2 Mo. App. 105, 5 Mo. App. 585; St. Joseph v. Hamilton, 43 Mo. 282; Owen v. Springfield, 83 Mo. App. 557; Sterrett v. Railroad, 108 Mo. App. 650; Kirn v. Railroad, 124 Mo. App. 271; St. Louis Ry. Co. v. Railway, 138 Mo. 591; Gibbons

v. Railway Co., 40 Mo. App. 146; Lohse & Miller v. Ry. Co., 44 Mo. App. 645; Railroad v. Railroad, 126 Mo. App. 272. (3) Cases relied upon by the respondents deal with condemnation laws differing materially from the General Condemnation Act and therefore are not precedents to and should not control the case at bar. St. Louis v. Meintz, 107 Mo. 611; Simpson v. Kansas City, 111 Mo. 237; Brewing Assn. v. St. Louis, 168 Mo. 37; Lester Real Estate Co. v. St. Louis, 170 Mo. 31; Nauman v. Drain. Dist., 113 Mo. App. 575; Cochran v. Wilson, 287 Mo. 210; Moxley v. Pike County, 276 Mo. 449; State ex rel. School Dist. v. Gordon, 231 Mo. 547; Reed v. Howell County, 125 Mo. 58. (4) It was clearly the intent of the Legislature when it conferred power to condemn lands, upon the School District of Kansas City, and only to condemn lands, "in the same manner as provided for condemnation of right of way in Article 2, Chapter 13, of the Revised Statutes," to give the school district all the rights and privileges conferred upon railroad companies by that law and to impose the same obligations upon it that a railroad company would incur if it should commence a condemnation proceeding and then abandon it before its purpose was effectuated; that is to say, it is obligated to compensate the owner for the cash outlay that he incurred by reason of the abortive proceeding, otherwise the same act, the same legislative language, would mean one thing if a railroad company were involved and another thing if a school district were involved, which is absurd. Authorities heretofore cited, and State ex rel. v. Goodrick, 257 Mo. 51; Lohse & Miller v. Railroad, 44 Mo. App. 654. (5) This is not an ordinary lawsuit. The Land Company had done no wrong. It was in the quiet and peaceful enjoyment of its property rights when the school district said: We will take your land for school purposes. We will now institute a proceeding conformable to the statute for that purpose. The landowner says: Very well; pay me what I am entitled to under the law. The school district drags that proceeding along for a year and a half; and it is reason-

ably to be inferred from this record that its purpose was, not in good faith to proceed according to law to ascertain the value of the owner's property sought to be taken and then pay him for it, but to use the process of law to constrain him to take less for his property than the wisdom of the law would allow him. School directors are human like other people. And the Legislature, doubtless recognizing these human traits, thought public necessities and public honesty would be best subserved by requiring that the school district, and any other public or *quasi*-public corporation which enjoys the extraordinary rights and powers of the Railroad Condemnation Act, should compensate the owner for his cash expenditures in case the condemnation suit were abandoned before its purpose was accomplished, and so wrote the law. See authorities heretofore cited. (6) The construction of this statute here contended for comports with common fairness and equity and the reasonable intendment of the constitutional restrictions on the aggressions of governmental authorities against the rights of property owners under the guise of eminent domain. Mo. Constitution, art. 2, secs. 11, 21; St. Louis Ry. Co. v. Railway, 138 Mo. 595; Kirn v. Railroad, 124 Mo. App. 276; Lohse & Miller v. Railway, 44 Mo. App. 645.

*McCune, Caldwell & Downing* for respondents.

(1) The right of the school district to institute and abandon condemnation proceedings is granted by Section 11428, and also by Section 11143, R. S. 1919. By the provisions of these sections the procedure is in accordance with the general statute governing the condemnation of rights of way. This statute (Art. 2, chap. 13, R. S. 1919) authorizes the abandonment of the proposed appropriation and provides for the payment of the costs of the proceeding. R. S. 1919, secs. 1793, 1796. (2) The general condemnation statute does not authorize the recovery of attorneys' fees or other expenses of the kind sued for in this action. "The costs of the proceedings" re-

ferred to in Section 1796 means the sum fixed by law as charges for the services enumerated in the fee bill. St. Louis v. Meintz, 107 Mo. 611. (3) Attorneys' fees and expenses not allowed by statute as taxable costs may be recovered only in a separate action and on equitable grounds, or because of the provisions of the charter of the party attempting to exercise the right of condemnation, and such fees and expenses are only recoverable from a common carrier or corporation organized for private gain, and not from a purely municipal corporation. North Mo. Railroad Co. v. Lackland, 25 Mo. 515; Leisse v. Railroad Co., 2 Mo. App. 105; St. Louis v. Meintz, 107 Mo. 611; Lohse & Miller v. Mo. Pac. Ry. Co., 44 Mo. App. 645; Sterrett v. Ry. Co., 108 Mo. App. 650; Kirn v. Railroad Co., 124 Mo. App. 271; St. Louis & Gulf Ry. Co. v. Cape Girardeau Ry. Co., 126 Mo. App. 272; St. Louis Ry. Co. v. So. Ry. Co., 138 Mo. 591. (4) Where condemnation proceedings have been instituted and later abandoned by a municipality or public corporation created solely for public service, the municipality or corporation is not liable for damages sustained by property owners on account of such condemnation proceedings unless it appears that the proceedings were unnecessarily, wrongfully and vexatiously delayed and continued. St. Louis v. Meintz, 107 Mo. 611; Simpson v. Kansas City, 111 Mo. 237; St. Louis Brewing Assn. v. St. Louis, 168 Mo. 37; Lester Real Estate Co. v. St. Louis, 170 Mo. 31; Nauman v. Big Tarkio Drain. Dist., 113 Mo. App. 575. (5) A school district is not liable in an action of this nature because school funds are collected from the public and held in trust for educational purposes only, and cannot be diverted to pay damages such as are sought to be recovered in this action. Cochran v. Wilson, 287 Mo. 210.

LINDSAY, C.—The essential issue in this case is sharply definable. The question is whether the School District of Kansas City, which instituted a proceeding to condemn land of the appellant for school purposes,

and, after prosecuting that proceeding for several months, dismissed it, is liable for the attorney's fees and other attendant expenses incurred by appellant in its defense, in that proceeding.

The appellant sued for the sum of $9107.66, the amount which it had paid out, or had become legally liable to pay, by reason of the institution of the proceeding to condemn, and set forth a schedule of the items thereof. The school district filed a general demurrer to the petition, which was sustained by the trial court. Appellant stood upon its petition, and from the resultant judgment the case is here on appeal. The petition is long, but need not be set forth, nor is extensive reference to the facts therein stated necessary; and only so much will be attempted as suffices to make plain the nature of the question to be decided, and the circumstances under which it arose.

The appellant is an incorporated company and the original owner of a large number of lots constituting a platted addition to Kansas City, known as Meadow Park Addition, comprising a tract of about eighty acres. The addition was established with the purpose, the petition states, of making it "a comfortable, agreeable and first class residential district;" and, in the conveyances made by the company to purchasers of lots certain restrictive covenants and agreements were imposed upon the grantees, and their assigns, as to the character of building and occupancy permitted. These covenants may be found fully set forth in the opinion of this court, in Peters v. Buckner, 288 Mo. 618.

On the 11th day of December, 1920, the school district instituted its suit in the circuit court to condemn Blocks 3 and 4 of this addition, owned by appellant, as a site for a public school house. The suit was against appellant and against all other owners of lots in said addition, and the object sought was to condemn the site, and also to condemn the rights or easements of appellant and of all other owners of lots arising out of the aforesaid restrictive covenants. The condemnation proceed-

ing advanced to the appointment by the circuit court of commissioners to assess the damages. Then, and therein, arose a controversy between appellant and other lot owners on the one side, and the school district and the circuit court on the other, as to whether the rights or easements arising out of the aforesaid covenants should be considered in assessing damages. That phase of the controversy was settled in the original proceedings instituted in this court by appellant and others in Peters v. Buckner, supra. Thereafter the condemnation proceedings were resumed in the circuit court. It is alleged in the petition that the commissioners, instructed as to the law in accordance with the ruling of this court in the Peters Case, had agreed among themselves as to the amount of damages to be allowed to each property owner, amounting in the aggregate to a much larger sum than was anticipated by the board of directors of the school district; that pending preparation of the report thereof, certain members of said board of directors interfered, and procured other persons to do so, by protests, so that said commissioners were embarrassed, and made no report, and were discharged by the court; and thereafter, on December 21, 1921, said school district, through its counsel, without notice to appellant, dismissed said condemnation proceeding. The petition alleges that appellant had estimated and claimed the sum of $160,000 as the value of the property rights which were sought to be appropriated, and states, upon information and belief, that said commissioners, if not interfered with, would have reported and allowed to plaintiff the sum of $100,000 as damages. The total amount demanded by appellant in this action is made up of the sum of $8000, for services of its attorneys in the condemnation proceeding and in prosecuting the mandamus suit in this court, $127.66 for traveling and other expenses incurred in the mandamus suit, $900 for the time and services of the executive officers of appellant company, and $35 for plats and blue prints used in the condemnation proceeding.

In the state of the pleadings, the question here is whether the school district is liable to appellant at all. The School District of Kansas City is organized and exists under the provisions of Article XV of Chapter 102, Revised Statutes 1919, governing districts in cities of seventy-five thousand and less than five hundred thousand inhabitants. Under Section 11403 of that article the school district is a body corporate, and may sue and be sued. The condemnation proceeding was undertaken under authority of Section 11428, wherein it is provided that if a desired site for school purposes is not purchaseable through failure to agree on the price, or otherwise, "the board may, in the name of the district, proceed to condemn the same in the same manner as provided for condemnation of right-of-way in Article II of Chapter 13 of the Revised Statutes." Said Article II contains the provisions governing condemnation proceedings by railroad, telegraph, and other corporations therein mentioned. There are numerous decisions of the appellate courts of this State, beginning at an early time, dealing with the right of corporations, after instituting such a proceeding, to discontinue the same, and with the question of their liability to the property owner who has incurred expense or loss by reason thereof. The liability of a railroad company under these conditions has been sustained in the following cases: North Missouri Railroad Co. v. Lackland, 25 Mo. 515; Railroad v. Reynal, 25 Mo. 534; Leisse v. St. Louis, I. M. & S. Railroad Co., 2 Mo. App. 105, 5 Mo. App. 585, 72 Mo. 561; Sterrett v. Railroad, 108 Mo. App. 650; Kirn v. Railroad, 124 Mo. App. 271; St. Louis Ry. Co. v. Southern Ry. Co., 138 Mo. 591; Gibbons v. Mo. Pac. Ry. Co., 40 Mo. App. 146; St. Louis & Gulf Ry. v. Cape Girardeau Ry. Co., 126 Mo. App. 272.

In the early cases mentioned the right to discontinue the proceeding was a question in issue. It was held that the right existed, and in the later decisions the only question is as to whether terms may be imposed, or of liability beyond payment of costs. The right is recognized

by the general condemnation statute, Sections 1793 and 1796, Revised Statutes 1919. Under Section 1793 it is provided that the costs up to and including the filing and copying of the report of the commissioners are to be paid by the appellant for condemnation, and costs of subsequent litigation are to be paid as the court in its discretion may deem just. This provision has reference to costs proper, those fixed by law, and has no reference to expenses incurred by the property owner for fees paid out to counsel, or other like expenses incurred in making his defense. [St. Louis v. Meintz, 107 Mo. 611.] In that case there was a provision of the charter of the city concerning costs, similar to the statute above mentioned. The case decides little more than that counsel fees are not costs, in a condemnation proceeding.

There are cases wherein it was held or said that a municipal corporation, upon abandonment of a condemnation proceeding, became liable to the property owner for expenses so incurred. [St. Joseph v. Hamilton, 43 Mo. 282; Owen v. City of Springfield, 83 Mo. App. 557.] In St. Joseph v. Hamilton, the question was not involved. At page 288 it was said: ''I have no doubt that the city may dismiss its proceedings at any time before final judgment in the circuit court; and then the only liability that would be incurred would be the expenses.'' But this was clearly outside of the issues before the court.

In Simpson v. Kansas City, 111 Mo. 237, the plaintiff sued the city for damages sustained and trouble and expense incurred in defending against a condemnation proceeding which the city abandoned. The gravamen of plaintiff's charge was that the proceeding was wrongfully and vexatiously prolonged to the interference of plaintiff in the use and enjoyment of his property and to his great expense. The proceeding was pending for a period of nine years. The court discussed the general question involved at some length, and in an instructive manner, and reviewed the prior decisions in certain other states as well. In that case, as in this, a demurrer to plaintiff's petition had been sustained. The court stated

its ultimate conclusion, and the grounds of it, as follows, at page 248:

"We think that unless defendant can show that this long delay was unavoidable, and that reasonable diligence was used in the prosecution of the proceedings in the appellate court, then plaintiffs should receive compensation for their damages. We think the long, unexplained and wrongful delay charged, and the final dismissal of the proceedings, with the alleged injuries, make a prima-facie case, and the demurrer should be overruled."

On the road to the conclusion so stated the court passed upon certain matters which are pertinent in this inquiry. There was a provision of the charter of the city, the effect of which was to give the city sixty days, after the making of the report of assessment of damages, in which to determine whether it would go forward or not. It was said, at page 243: "The authorities directing such improvements should have, and in the absence of statutory provisions are generally held to have, discretion to accept or reject the property at the price fixed. 'This rule is a necessity in view of' the rational conduct of affairs.'" The distinction between damages and costs and expenses was recognized. It was held that a municipal corporation was not liable to the property owner for "damages inflicted by needlessly commencing and prosecuting proceedings—and which was afterwards abandoned." What was said to the contrary in Leisse v. Railroad was disapproved. It was said, at page 246:

"Every owner of real estate, especially in a town or city, holds his title thereto subject to the right of the public to appropriate it, in case of necessity, to public uses, the appropriation to be enforced, if legal force is necessary, according to the charters and laws governing that subject. This inconvenience and damage is incident to the ownership of property. A proceeding in conformity to the charter and the laws of the land would not be wrongful, and would not subject the corporation to damages, though subsequently abandoned. The right to

discontinue might not be granted by the court except up-
on equitable terms as the payment of costs and expenses.
[Railroad v. Lackland, supra; City of St. Louis v. Meintz,
supra.]    We are not willing to strictly apply the rule de-
clared in the Leisse Case, supra, to a city having the char-
ter rights of this defendant.''

Under the provisions of Section 1793 of the general
condemnation statute payment of the amount assessed
for taking the property must be made upon the filing of
the report, and the corporation seeking to condemn, if it
desires to abandon ''the appropriation of any parcel of
land,'' must so elect by an instrument of writing to that
effect, to be filed with the clerk of the court wherein the
proceeding is pending, within ten days from the return
of the assessment of damages, otherwise payment may be
enforced by execution.    Without doubt, under this pro-
vision, a school district may abandon its purpose to con-
demn, and thereupon the assessment of damages would
become void.    The express right to abandon at this stage
of the proceeding, as for an assessment deemed unrea-
sonably large, implies the right to discontinue or abandon
at an earlier stage.    In either case the costs would go as
provided by statute, and according to the control by the
court over costs incurred in proceedings had before it.
But the question whether ''the right to discontinue might
not be granted by the court except upon equitable terms
as the payment—of expenses,'' meaning thereby counsel
fees, and the like, is a materially different thing.    Upon
that there is not any provision of statutory law.    It may
be observed that in the leading case in this State, North
Missouri Railroad Co. v. Lackland, 25 Mo. 515, the au-
thority, and mode of proceeding to condemn, were pre-
scribed by the act constituting the charter of that com-
pany.    The charter had no provision expressly permit-
ting an abandonment, but, because under the terms of the
act, the right of the company to the land did not vest upon
any of the preliminary stages of the proceeding, and be-
cause the charter gave to the company ''the right of
changing their route up to the very period of commencing

their work, and even beyond that, upon certain contingencies referred to in the statute,'' it was held that the right to discontinue existed. Following the provisions in the charter setting forth the terms of condemnation proceeding thereunder, there was this provision (Laws 1851, page 486): ''In all such cases, the court shall adjudge the costs of the proceedings according to equity; and the court shall have power to make such orders and take such other steps, as will promote the ends of justice between owners of such land and said company.'' After reference to the charter provision quoted, this court said in the Lackland Case, at page 534: ''It is obvious that if the company is permitted to discontinue, all the costs and expenses of the landowner should be paid by the company. This will embrace all the costs of the case and counsel fees, both here and in the court where the case was tried.'' It may be further observed that in that case the order of dismissal was sought more than one month after the report was filed, that at the time of the appointment of the commissioners ''the location of the road was upon defendants' land,'' but that, at the time the trial court made its final order denying the application to dismiss, the plaintiff's ''railroad had been removed from defendant's land, and was in process of construction on other land than that of defendant.''

There are some other cases to be noticed. In Brewing Assn. v. St. Louis, 168 Mo. 37, the suit of the plaintiff was for damages and for counsel fees, incurred, it was claimed, through condemnation proceedings instituted by the city, but dismissed before final action of the court. A demurrer to the petition was sustained by the trial court, and its action was affirmed by this court. Primarily, the decision was based upon certain provisions of the charter of the city of St. Louis. Among these charter provisions was one that the city had the right, after having reasonable time to investigate the report of the commissioners, to dismiss the proceedings at any time before final confirmation, and another provision that the city, after such dismissal, could not again undertake such

condemnation within the following period of ten years, and also a provision making the failure of the municipal assembly to make appropriation for payment of the damages assessed operate as a dismissal. The opinion by Gantt, J., discussed the case of Simpson v. Kansas City, 111 Mo. 237, and St. Louis Railroad v. Southern Railroad, 138 Mo. 591, points out that the opinions in both of those cases were written by Macfarlane, J., and that it was clear that by his citation of the Simpson Case, in the later case, he did not consider that he was announcing a contrary doctrine in the one to that which he promulgated in the other. The moving reasons of the court in the St. Louis Railroad Case are stated in Brewing Assn. v. St. Louis, 168 Mo. l. c. 45, as follows:

"Accordingly, upon a comparison of the statute upon which the proceeding in St. Louis Railroad v. Southern Railroad, 138 Mo. 591, was based, with the charter of the railroad in the Lackland Case, the court reluctantly came to the conclusion, in view of the long line of decisions based upon Lackland v. Railroad, that there was not sufficient evidence of a change in the intention of the Legislature (the statute requiring that all costs shall be adjudged by the court 'as it shall deem to be just'), to require a different ruling, and, hence, allowed counsel fees in that case—but the court did not consider the railroad act as applying to a municipal corporation having the right to dismiss its proceedings, we think is obvious—not only because the court says it is unwilling in the Simpson Case to apply the rule in Leisse v. Railroad, 2 Mo. App. 105, 72 Mo. 561, to a city having the right under its charter to discontinue its proceedings on the payment of costs, but because it is evident the court was considering the Simpson Case when it decided Southern Railroad v. St. Louis Railroad, and in no way disapproved the former, but drew a distinction between a private corporation invoking the power of eminent domain for private gain, and a municipal corporation acting solely in behalf of the public interest."

In Lester Real Estate Co. v. St. Louis, 170 Mo. 31, the suit was to recover the amount of counsel fees paid out by plaintiff, in defending against a condemnation proceeding brought by the city, and abandoned. The holding was that the city was only liable when it was made to appear that such proceedings were ''needlessly, wrongfully and vexatiously continued by the city, against the protest of the landowner, when it is in the power of the city to dismiss and avoid the injury to him.'' It thus followed the decision in the St. Louis Brewing Assn. Case, and cites no other authority. The same charter provisions were involved in the two cases.

In Nauman v. Big Tarkio Drainage District, 113 Mo. App. 575, the suit was one to recover counsel fees paid out in a condemnation proceeding instituted by the drainage district, but afterward dismissed. The proceeding in that case was not had under or by reference to the general condemnation law, but under the provisions of Section 8261, Revised Statutes 1899, which prescribed a method of procedure to be had in the circuit court for the condemnation of lands by the drainage district. Under that statute, the district could not enter upon the land until the assessed damages had been paid in to the clerk, and if they were not paid within two years after the filing of the report, the proceeding as to the right-of-way not so paid for was abated. The Kansas City Court of Appeals held that the drainage district was not liable. The court said, at page 581: ''The statute failing to impose any liability in the event of abandonment, beyond the payment of costs, none can be enforced without it appears that the corporation has needlessly, wrongfully and vexatiously delayed the proceedings, and thereby damaged the landowner.'' It was said that under the prior decisions different rules had been held to apply to railroad and other private corporations engaged in public service, based upon special charter provisions which authorize recovery by the landowner of counsel fees and expenses incurred by the landowner, on account of proceedings abandoned by the company.

The question at the root of the instant case is, whether the Legislature, in referring the school district to the general condemnation law for its manner of procedure, in undertaking to condemn a site for school purposes, must be held to have intended thereby to impose upon the school district the same liability to the landowner which a railroad corporation would incur, should the proceeding be discontinued. Section 11428, Revised Statutes 1919, authorizes the school district to proceed "in the same manner" as does the railroad or other like corporation, but, obviously different results may follow. The railroad corporation by condemnation of land for its tracks, secures only an easement for the use of the land. The fee remains in the owner. [Sec. 1793, R. S. 1919; St. Louis, K. & N. Ry. Co. v. Clark, 121 Mo. 169; Boyce v. Mo. Pac. Ry. Co., 168 Mo. 583.] Under Section 11428, as to the school district, the provision is: "And on such condemnation and payment of the appraisement as provided, the title to the land sought to be condemned shall vest in the school district." Under Section 1793 it is provided that payment of the amount assessed may be enforced by execution. Section 11428 took so much of the condemnation law as was appropriate to the purposes of the school district. "Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. When so adopted, only such portion is in force as relates to the particular subject of the adopting act, and as is applicable and appropriate thereto." [2 Lewis-Sutherland Statutory Construction (2 Ed.) sec. 405.] The reference in Section 11428 to Article II of Chapter 13, of the Revised Statutes, was a reference to a method of procedure only. It was not intended thereby to impose upon the school district a liability, or a right peculiar or appropriate to railroad or other like corporations mentioned in that article, by reason of any provisions in the charters of those corporations, or by reason of the fact that

they are corporations whose property, though devoted to a public use, is held in private ownership and is acquired for purposes of private gain.

In the Lackland Case the court had under considera-tion not a general condemnation statute, but the special act constituting the charter of the North Missouri Rail-road Company, with the provisions therein contained con-cerning condemnation proceedings to be taken by that company. In St. Louis Ry. Co. v. Southern Co., 138 Mo. l. c. 596, this court said: "Was the question of the re-covery of such expenses on dismissal of condemnation proceedings a new one in this State, we might hesitate in sustaining this action. But this court forty years ago held that in the discontinuance of proceedings to condemn land for the use of a railroad, the landowner was entitled to payment by the company of all the costs of the case, in-cluding counsel fees."

The school district does not exist for any private gain or purpose, but wholly for public and beneficent purposes. The right of Kansas City, in the Simpson Case, and of St. Louis in the Brewing Assn. Case, as mu-nicipalities through provisions of their charters, to dis-miss condemnation proceedings upon payment of costs, and without liability for expenses or counsel fees incurred, was sustained. No statute forbade it. No statute forbids the school district from dismissing. The ques-tion of dismissing the proceeding to condemn a particular parcel of land for a site must be determined by the mem-bers of the board of directors, as public officials, and as in the public interest. In the absence of any statute im-posing liability upon the school district for their act of discontinuance, it should not readily be held that the school statute, Section 11428, which authorizes the dis-trict to condemn a site and points out Article II of Chap-ter 13 as prescribing the manner or mode of proce-dure to be followed, must be construed as meaning that the school district by discontinuing its proceeding to con-demn, incurs the same liability as it has been held the private corporations therein designated, incur by a dis-

continuance. In respect of manner of procedure, Section 11428 was a reference statute. "Reference statutes are of frequent use to avoid encumbering the statute books by unnecessary repetition." [State v. Peyton, 234 Mo. 523.] The case just mentioned, and some others, are cited by appellant as authority for the claim that Article II of Chapter 13, as construed by the court, have become a part of the School District Act—and in respect of the liability here claimed. In respect of form and manner of procedure, and costs allowed by statute, the claim is undoubtedly correct. In respect of the application of the rule of liability to a school district, the question is one of first impression. In the absence of statutory enactment, or of precedent more compelling in force than those cited, it should not be held that this liability attaches to the school district.

The petition does not charge that the proceeding was needlessly brought, or vexatiously and unnecessarily prolonged. A recovery is not sought on those grounds, but it is alleged that through protests of members of the board of education and of others procured to protest, the commissioners failed to make any report, and that the proceeding was dismissed without notice to appellant, and it is alleged, upon information and belief, that if the commissioners had made their report, and done so unaffected by protest or outside persuasion, the appellant would have been allowed the sum of $100,000 as the amount of its damages. But the court could not have taxed these expenses, but only costs against the school district in that proceeding, under the decision in St. Louis v. Meintz, 107 Mo. 611, and Section 1793, Revised Statutes 1919; and the appellant had no vested interest in the putative sum of $100,000, not reported. [Gray v. St. L. & S. F. Ry. Co., 31 Mo. 126.]

School districts as *quasi*-corporations are created for a specific purpose—the promotion of education among the children of school age within the district. They are local agents of the State for that purpose. Their power to levy taxes is limited; the funds thereby derived are de-

301 Mo.—45

voted to specific uses toward the common end; and it is the announced policy of the State that they be jealously guarded. The power of school districts to contract, or to incur liability, is limited, and is controlled by statute, and must be shown to arise out of authority granted expressly, or by necessary implication. [35 Cyc. 949-951; Cochran v. Wilson, 287 Mo. 210; Reed v. Howell County, 125 Mo. 58.] Appellant founds its right of action upon a statute, Article II of Chapter 13, as it has been construed, and upon Section 11428. Frequent reference has been made in the opinions in the cases cited to statutory provisions and to charter provisions of railroad companies, and of cities; but in St. Louis v. Meintz, 107 Mo., BLACK, J., in the opinion, said, at page 615:

"In the Lackland Case, it is true, mention is made of the statute which provides that the court shall adjudge the 'costs of the proceeding according to equity'; but it is evident that this court imposed the terms of paying counsel fees, not because of the statute, but independent of it." The liability here claimed ought not to be held to exist independent of any statute, or, at most upon a construction so doubtful in character.

The judgment of the circuit court should be affirmed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. *Woodson, James T. Blair* and *Ragland, JJ.,* concur; *Graves, J.,* dissents.