STATE OF MISSOURI at the Relation of THE CITY OF ST. LOUIS, a Municipal Corporation, Relator, v. CLYDE C. BECK, Judge of the Circuit Court of the City of St. Louis, Division No. 14.—63 S. W. (2d) 814.

Court en Banc, October 19, 1933.

*Charles M. Hay, John T. Hicks Oliver T. Johnson* and *Seward McKittrick* for relator.

*Kratky, Spencer, Soffer & Nessenfeld* for respondent.

TIPTON, J.—This is an original proceeding in prohibition to prohibit the respondent, as one of the judges of the Circuit Court of the City of St. Louis, from issuing certain instructions to commissioners in a condemnation suit wherein the city of St. Louis sought to condemn various tracts of land for the widening of what is known as Twelfth Boulevard. The relator brought condemnation suit in the Circuit Court of the City of St. Louis on September 17, 1920, for the widening of this boulevard. The ordinance upon which the condemnation suit was based was passed on February 17, 1920. Relator filed an amended petition and on June 6, 1924, the circuit court appointed commissioners to assess benefits and damages and they filed a partial report of their proceedings on March 4, 1929. The final report was never filed. During the course of the proceedings various amending ordinances were passed relating to easements upon a limited portion of the properties affected. On March 30, 1931, a

new ordinance was passed which radically changed the lines of the street. On July 21, 1931, the city filed another amended petition, incorporating the new ordinance.

Among the properties affected was that of the Poinsett Realty and Investment Company which it purchased in 1928. Under the original proceeding the city sought to condemn all the property now owned by the realty company at the northwest corner of High Street and Lucas Avenue. Under the last amended petition the only portion of this property sought to be completely appropriated was a strip fronting 4.73 feet on Lucas Avenue and 1.077 feet on the alley. After the last amended petition was filed the realty company was notified that the commissioners would sit again in the condemnation suit and it then filed in respondent's court a motion praying that the court instruct the commissioners to hear evidence to determine whether the said company had sustained damages as a result of the pendency of the condemnation proceeding. Among the items of damages which the realty company sought to prove to the commissioners were the decrease in rental values, including the inability to rent the property for any definite period of time, the inability to improve the property, the inability to sell the property at a fair price, and the inability to finance the property upon reasonable terms.

The respondent sustained the motion and by his return states "that unless prohibited by this court he will issue instructions to the commissioners appointed to assess benefits and damages in said condemnation proceedings in accordance with the prayer of the motion aforementioned; that he will instruct the commissioners that no damages are allowable for ordinary delays incident to a condemnation proceeding; that he will further instruct said commissioners to hear evidence to determine whether damage has been sustained as a result of the amendments during the course of the proceeding abandoning part of the property originally sought to be condemned. Respondent further states that he will instruct said commissioners to hear evidence to determine whether damage has been sustained by abandoning the property after an eleven-year delay; and that damages of the nature described in said motion are allowable." It is to prohibit the issuing of these instructions that the relator has brought this proceeding.

Among the factors which led to the respondent's decision to sustain the motion in the proceeding below is the practice of the city of St. Louis to decide upon major street widenings, institute suit to carry out its purpose and during the pendency of the suit to work out the lines of the street. The method in general is to seek in the original petition to appropriate more land than is later determined to be necessary. He states that the city has found it simpler to abandon portions of the property as the final plan becomes more definitely formulated. That is to say, the lines of the highway are not definitely determined upon at first, but are worked out by the process of amend-

ments before time of final judgment. Respondent in his return states that that practice was followed in this suit.

The relator contends that if the realty company is entitled to any damages caused by the litigation in the condemnation proceeding, it must file a separate suit independent of the condemnation proceeding in order to recover such damages. That is, the respondent would have no jurisdiction to inquire into damages of the character described in the realty company's motion in the proceedings before him. On the other hand the respondent contends that if the realty company suffered damages, not due to ordinary delays incident to the condemnation proceedings, such damages should be assessed by the commissioners and be recoverable in that proceeding.

We have held that where condemnation proceedings have been instituted in bad faith or have been needlessly, wrongfully or vexatiously delayed by the condemner for a long period of time over the objection of the landowner and finally dismissed, a cause of action accrues to the landowner if he sustained injury, though he retained possession and a qualified use of the property during the pendency of the condemnation proceedings. [Simpson v. Kansas City, 111 Mo. 237, 20 S. W. 38; St. Louis Brewing Assn. v. St. Louis, 168 Mo. 37, 67 S. W. 563; Meadow Park Land Co. v. School District, 301 Mo. 688, 257 S. W. 441; Lester Real Estate Company v. St. Louis, 170 Mo. 31, 70 S. W. 151.]

It is upon the principle of law announced in the above cases that the respondent intends to instruct the commissioners that they may ascertain if the realty company has been damaged by the fact that the condemnation proceedings have been unduly and wrongfully prolonged by the relator due to the method used by the relator in condemning private property for public use, and if the commissioners find the realty company has sustained such damages, to include them in assessing the amount of damages the company would necessarily sustain in having a part of its property taken as described in the relator's last amended petition.

The damages sustained from the institution and pendency of the condemnation proceeding itself, if any, must be an action sounding in tort. [Simpson v. Kansas City, supra.] In this proceeding the sole question for our determination is whether damages growing out of the alleged negligent prosecution of a condemnation proceeding may be assessed in such proceeding itself, or whether damages of that character can be recovered only in an independent action.

Article XXI of the Charter of the City of St. Louis confers jurisdiction in condemnation proceedings upon the circuit court of that city. This court has only such jurisdiction as is conferred upon it by the Charter.

"The jurisdiction of courts over eminent domain proceedings is wholly statutory, and no court has jurisdiction in such matters ex-

cept in so far as it is given jurisdiction by the provisions of the statute." [2 Nichols, Eminent Domain (2 Ed.), sec. 425, p. 1121.]

Section 3 of Article XXI of the Charter authorizes the court to appoint three commissioners "to assess the damages which the owners may severally sustain by such taking or damaging and to assess benefits as hereinafter mentioned." Section 4 says, "It shall be the duty of the commissioners . . . to ascertain the value of the property proposed to be taken and the actual damage done to private property." The Charter follows Section 21 of Article II of our State Constitution which provides "that private property shall not be taken or damaged for public use without just compensation."

■ What is meant by the phrase, "that private property shall not be taken or damaged," in this provision of our Constitution is clearly stated in the case of the City of Moberly v. Hogan, 317 Mo. 1225, l. c. 1234, 298 S. W. 237, wherein we said:

"It has been held by this court by a long line of decisions, that proceedings for condemnation of private property for public use, are proceedings *in rem,* and purely statutory. [City of St. Louis v. Koch, 169 Mo. l. c. 591, and cases there cited.] This proceeding was one to condemn a specific tract of land. Annexed to, or connected with, property sought to be condemned, there may be rights or easements, directly and specially affected by the taking of the property, and, for the taking or affecting of those rights and easements compensation must be made. [Peters v. Buckner, 228 Mo. 618.] But, it must be shown 'that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected.' [Peters v. Buckner, l. c. 637.]"

In the case of Peters v. Buckner, 288 Mo. 618, l. c. 637, 232 S. W. 1024, in a concurring opinion by Graves, J., in which a majority of the court concurred, we said:

"In Van De Vere's case, 107 Mo. l. c. 91, we, in the discussion of the change made in the original law by the Constitution of 1875, said: 'The amendment must be construed and applied in view of the evils which it was designed to remedy. We have seen that before this amendment there were many cases where the *corpus* of the property was not taken, yet rights directly annexed to the property were injured, and that for such consequential damages the property owner had no remedy, because the act was authorized by law. Whether the plaintiff must now, in all cases when claiming that his property has been "damaged" for public use, show that the injury is one for which he might have maintained an action if the act had not been done by authority of law, we need not say in this case. *What we do say is this, that he must show that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected.'* (The italics are ours.)"

The pendency of the condemnation suit in no way affected the property itself and, therefore, did not damage the property. Under Section 5 of Article XXI the value of the property taken or damaged must be of the date that the ordinance became effective. It is true that from the time of the filing of the condemnation petition the owner's right to sell or improve and develop the property would be subject to condemnation suit. In the case of Brunn v. Kansas City, 216 Mo. 108, l. c. 119, 115 S. W. 446, we said:

"The filing of the petition to condemn and notice to the defendants was in the nature of a *caveat* to all concerned, including the world at large, that the city had laid its hand on the property and that the proceedings might ripen into a sequestration of it. Beginning from that time the owner's power to sell would be whittled away, his right to improve and develop the property would be in abeyance. After judgment and pending appeal he would hold but a base or qualified fee subject to all inconvenience and injury having their root in that fact. Finally, when the proceedings were dismissed by an election of the city not to go on with its scheme, the landowner, pinched in pocket, would have nothing but his memory of troubles and detriment suffered. But all these things are but incidents of the exercise of the right of eminent domain, to which right every rood of land in a civilized state is subject; and neither the ingenuity nor wit of man has hitherto been adequate to discover any plan of general or special taxation, or for the establishment of boulevards, parks and streets, ideally equitable and free from inequalities and unfairness in an easily imagined case. I doubt not that such Utopian plan for the future is but the iridescent dream of a dreamer. As said by BRACE, J., in Kansas City v. Ward, supra: 'The inconveniences arising from the institution of these proceedings and the delay or ultimate failure that may mark the course of their subsequent prosecution are the necessary incidents of the right of eminent domain in an orderly and judicial manner and cannot be wholly provided against by legislation.' "

"The uncertainty caused by the probability that the proceedings will be carried through and the proposed work constructed over his land differs in degree only from that shared by the owners of all property, which may at any time be taken by eminent domain, whenever it may chance to lie in the path of a public improvement, and the decrease in income or other losses he may suffer from such uncertainty is held to be *damnum absque injuria*." [2 Nichols, Eminent Domain (2 Ed.), sec. 420, p. 1106.]

Respondent in his brief contends "since, therefore, as a result of the institution of the condemnation proceedings and their ultimate partial dismissal, there has been a taking of property or at least a serious damage thereto for public use, the movent below is clearly entitled under the Constitution to compensation therefor."

■ The institution of condemnation proceedings of itself operates to restrict the owner in the full enjoyment of the premises affected thereby. If, after the institution of such proceedings, improvements are made, the maker thereof is charged with knowledge that he cannot recover compensation for such improvements; or, to state it another way, he makes them at his peril. Likewise, if a conveyance is made of property pending the condemnation proceedings, title passes subject to such proceedings. In the proceeding pending before the respondent there will not, as regards damages for pendency and delay of the suit, be a taking of the property or a damage of the property as is contemplated by the Charter of the City of St. Louis or the Constitution of this State that can be determined in a condemnation suit.

■ If a court is about to give to its commissioners an erroneous instruction in regard to the damages of the property affected, prohibition is the proper remedy to prevent the trial court from acting in excess of its jurisdiction. [Peters v. Buckner, supra.]

Respondent contends that if the realty company is not allowed to recover in this action, the judgment in the condemnation suit will be *res judicata* in a subsequent action in tort by the property owner against the city, and relies upon the case of Tremayne v. City of St. Louis, 320 Mo. 120, 6 S. W. (2d) 935. But that case is not in point. The city of St. Louis brought condemnation suit for the grading of a certain street and the plaintiffs, abutting property owners, had notice of such suit, were adjudged to be benefited by the proceedings, paid benefits to the city, and made no claim for damage in the lowering of the grade of the street. We held that the judgment in condemnation suit was *res judicata* in a subsequent action in tort by plaintiffs against the city to recover consequential damages by reason of the lowering of the grade of the street.

We do not undertake to decide if the realty company is entitled to any damages on account of the pendency or delay of the condemnation proceeding itself and if there is any damage on account of such proceedings, it is of a personal character as distinguished from any damage to the property itself and is not an element to be considered by the commissioners in assessing benefits and damages in this proceeding. [Re Pittsburgh, 243 Pa. 392, 90 Atl. 329, 52 L. R. A. (N. S.) 262.]

We, therefore, believe that the respondent would be acting in excess of his jurisdiction in giving an instruction to the commissioners to consider such damages as are set forth in the realty company's motion. It is our conclusion that the preliminary rule should be made absolute. It is so ordered. All concur.