**George DIETSCH and Bernice Dietsch, Plaintiffs-Appellants,**

v.

**ST. LOUIS COUNTY, Missouri, Defendant-Respondent.**

No. 52071.

Supreme Court of Missouri, Division No. 1.

June 12, 1967.

Padberg & Raack, Charles P. Todt, St. Louis, for appellants.

Joseph B. Moore, St. Louis County Counselor, Don R. Williams, Associate County Counselor, Clayton, for respondent.

WELBORN, Commissioner.

This is an action to recover $1,800 expended by appellants in defense of a condemnation proceeding which the respondent St. Louis County abandoned. The court, on a trial without a jury, found for the county and this appeal followed.

The appellants, George and Bernice Dietsch, were the owners of a two-acre tract at 710 Josephine Drive in St. Louis County. They resided there and also grew flowers commercially on the property.

In July, 1957, St. Louis County employed two appraisers to make a "windshield" appraisal of the Dietsch property. A "windshield" appraisal was described as one in which the appraiser merely drives by the property and estimates its value without actually going on the property. The "windshield" appraisals, one of $20,000 and the other of $25,000 for the Dietsch property, were transmitted to "St. Louis County's representatives."

On May 7, 1958, the St. Louis County Council passed an ordinance, authorizing the Board of Public Works and the County Counselor to acquire three tracts, including the Dietsch property, for park purposes.

The St. Louis County Counselor's office employed two appraisers to make a complete appraisal of the Dietsch property. They did so and reported values of $66,100 and $66,400. The appraisers transmitted their reports to Assistant County Counselor Finot in August, 1958.

On August 22, 1958, Finot went to see Mr. Dietsch and informed him that an offer of $66,700 would be made for his property. Mr. Dietsch heard nothing further and on April 9, 1959, he wrote an unidentified official of St. Louis County, offering to sell the property for $78,000. A few days later, Mr. Dietsch received from Herbert G. Poertner, St. Louis County Public Works Director, a letter dated April 14, 1959, in which Poertner stated that St. Louis County could not accept Dietsch's offer and that

"the maximum which St. Louis County can offer, which is ten percent above the average of the two appraisals, is $23,650." Mr. Poertner asked for a reply within ten days to the offer of $23,650. Dietsch rejected the offer and heard nothing further from the county. On June 1, 1959, he wrote Poertner to find out "where we stood." Poertner replied that the matter was out of his hands and that Mr. Finot was handling it. Dietsch attempted unsuccessfully to get in touch with Finot. On October 14, 1959, St. Louis County, by its County Counselor, filed suit in the St. Louis County Circuit Court to condemn the Dietsch property.

Dietsch employed an attorney who participated in the hearing on the condemnation petition. An order of condemnation was made, the court finding "that St. Louis County had endeavored to agree with the defendant on the proper compensation, if any, to be paid as damages for the property and rights sought to be appropriated, but it is unable to agree thereon; that the plaintiff has complied with all the requirements of the law."

Commissioners were appointed to assess damages. Dietsch's attorney participated in hearings before the commissioners and Dietsch employed two appraisers who examined his property and testified to a value in the vicinity of $67,000. The commissioners' report, filed January 27, 1960, fixed Dietsch's damages at $69,000, including $2,000 for growing plants. St. Louis County filed exceptions to the commissioners' report on February 2, 1960.

On April 27, 1960, the St. Louis County Council repealed the ordinance authorizing the acquisition of the Dietsch property. On June 8, 1960, the County Counselor dismissed and abandoned the condemnation proceeding. No evidence was presented as to the reason for the abandonment of the condemnation.

This action was instituted by plaintiffs to recover their expenditures of $1500 attorney's fees and $300 appraisers' fees in the condemnation proceedings. The petition was in two counts. The first charged that the action of St. Louis County in instituting and pursuing the condemnation was in bad faith because they had appraisals fixing the value of plaintiffs' property at $67,000 before the action was begun and yet, when the commissioners made an award of approximately that amount, the county abandoned the proceedings because the property was too costly to be used for park purposes. (This is not the precise claim advanced by appellants on this appeal, as set out below.) Count II alleged that the action of the county in undertaking and then abandoning the condemnation constituted a taking and damaging of plaintiffs' property within the meaning of § 26 of Article I of the Constitution of Missouri, 1945, V.A.M.S.

Upon a hearing at which plaintiffs adduced evidence substantially of the facts set out above, the trial court, sitting without a jury, found against plaintiffs on both counts of their petition. The trial court made no findings of fact or conclusions of law. The county produced no testimony at the hearing. Its case consisted of introduction of the ordinance directing abandonment of the condemnation and calling the court's attention to § 523.045, RSMo 1959, V.A.M.S.

According to appellants' brief, two issues are presented on this appeal:

"1. Can a land owner recover litigation expenses from a public corporation that has acted in bad faith?

"2. Are litigation expenses paid by a land owner a 'taking' or 'damaging' of private property for public use without just compensation therefor, and as such, a violation of the Missouri Constitution?"

On the first issue, appellants cite State ex rel. City of St. Louis v. Beck, 333 Mo. 1118, 63 S.W.2d 814, 92 A.L.R. 373; Hamer v. State Highway Commission, Mo.Sup., 304 S.W.2d 869, and Center School District No. 58 of Jackson County v. Kenton, Mo.

Sup., 345 S.W.2d 120. Appellants acknowledge that recovery of condemnees' expenses or damages was denied in those cases, but they rely upon language in those cases giving apparent recognition to the rule that bad faith on the part of a public condemning authority renders it liable to the condemnees upon abandonment of the eminent domain proceeding. See 63 S.W.2d l. c. 815; 304 S.W.2d l. c. 872 [6]; 345 S.W.2d l. c. 126 [2]; Annotation, "Liability, upon abandonment of eminent domain proceedings, for loss or expenses incurred by property owner, or for interest on award or judgment," 92 A.L.R.2d 355, § 4, "Effect of condemnor's bad faith or unreasonable delay," p. 363.

However, we reach neither this question nor the county's ultimate defense of governmental immunity, based upon Manley v. State Highway Commission, Mo.App., 82 S.W.2d 619.

The appellants concede that bad faith on the part of the condemning authority is an essential element of the liability which they assert.

On this appeal, appellants base their claim of bad faith upon two sets of circumstances. First, they say that the county pleaded that the appellants' land was *"necessary"* and that the county had *"diligently"* tried to agree with the owners about the compensation for it. Appellants say that the county's only attempt to negotiate was an offer of "one-third of the true value of the land," followed by perfunctory and summary abandonment of condemnation of land they had previously pleaded was necessary to condemn.

As for the diligence in negotiations, the trial court on the condemnation project went into that subject and found that the county had endeavored to negotiate with appellants on the price of their property. Appellants' attorney participated in the hearing on the condemnation petition. Insofar as here appears, no question was raised at that time about the sufficiency and bona fides of the county's efforts to negotiate with defendants.

As for the pleading of necessity of obtaining the appellants' property, any exercise of the power of eminent domain involves a legislative or administrative determination of "necessity." Such determination is not, however, irrevocable and does not cause a subsequent abandonment to evidence bad faith.

Appellants complain of the "perfunctory" and "summary" termination of the condemnation proceedings. However, the record here is almost completely devoid of evidence of the circumstances of abandonment of the project. It does appear that three separate tracts were involved in the park proposal and that the condemnation involved three separate tracts. However, the record is wholly silent as to what, if any, bearing the commissioners' report of value of the other two tracts had upon the decision to abandon the project. The appellant alleged, as part of this cause of action, the bad faith of the county. They were obliged to produce some substantial evidence to support such allegation, and are not entitled to rely upon unsupported inferences.

The second aspect of appellants' claim of bad faith is based upon the fact that Poertner's offer of $23,650 was expressed as "ten percent above the average of *the* two appraisals," although the county at that time had in its possession reports of its appraisers fixing a value of approximately $66,000 for the property. Appellants state that Poertner's offer thereby involved a "material misrepresentation of fact." However, the county did have two appraisals which provided a basis for Poertner's statement. Furthermore, the involvement of two separate county agencies, the Planning Department and the County Counselor's office, may well have produced a left hand not knowing what the right was doing situation. We would not infer bad faith from these circumstances.

■ Appellants rely upon Housing Authority of City of North Little Rock v.

Amsler, 239 Ark. 592, 393 S.W.2d 268, in support of this claim of bad faith. There, the Arkansas court did conclude that abandonment of a portion of a project after pleading the necessity of the taking would support an inference of bad faith on the part of the condemning authority. In a subsequent appeal, involving the allowance of attorney's fees and costs to the affected condemnee, Housing Authority of City of North Little Rock v. Green, 241 Ark. 47, 406 S.W.2d 139, the court held that the fact that the condemnor did not have sufficient funds to pay the amount of the condemnation verdict did not show that the condemnor acted in good faith. We cannot accept the Arkansas court's premise that an allegation of necessity of acquisition of property followed by abandonment of the condemnation supports an inference of bad faith on the part of the condemning authority. Bad faith "partakes of the nature of fraud." Spiegel v. Beacon Participations, 297 Mass. 398, 8 N.E.2d 895, 907. Just as fraud is not to be presumed but must be proved by the party charging it (Shepherd v. Woodson, Mo.Sup., 328 S.W.2d 1; Bayer v. American Mut. Cas. Co., Mo.Sup., 359 S. W.2d 748), so must bad faith. We simply disagree with the Arkansas court's conclusion that the circumstances upon which it relied established bad faith.

 In any event, we are unable, from our de novo review of the record before us, to conclude that the presumed finding of the trial court of failure of proof of bad faith on the part of the county was clearly erroneous (Civil Rule 73.01(d), V.A.M.R.) and we therefore would not disturb its judgment as to Count I of appellants' petition.

Count II is based upon the second proposition which appellants say is involved here, whether there has been a "taking or damaging" of their property within the meaning of § 26 of Article I of the Missouri Constitution. Appellants cite no Missouri cases in support of their contention on this basis. The reason for this is that the Missouri cases are contrary to the position of appellants. Appellants cite no damage to the land itself. The county at no time entered into possession of it and appellants were not deprived of its use. Our cases hold that a taking or damaging, to fall within the constitutional provision relied upon, must involve the land itself. State ex rel. v. Beck, Hamer v. State Highway Commission, supra. The items of expense such as are here involved are not such that § 26 of Article I requires the landowners be reimbursed therefor.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.