**STATE of Missouri ex rel. STATE HIGHWAY COMMISSION, Plaintiff-Respondent,**

**v.**

**Charlotte Louise WILCOX et al., Defendants-Appellants.**

**No. 36230.**

Missouri Court of Appeals, St. Louis District, Division Four.

March 16, 1976.

Joe Bill Carter and John J. Allan, Clayton, for defendants-appellants.

Bruce A. Ring, Chief Counsel, Jefferson City, Richard E. Baker, Asst. Counsel, Kirkwood, for plaintiff-respondent.

ALDEN A. STOCKARD, Special Judge.

In this action to condemn land for highway purposes the jury award of just compensation was $22,000, and the landowner has appealed. We affirm.

The State Highway Commission took an entire parcel of land with the improvements for the construction of Interstate Highway 44. The parcel, known as 1724 Longfellow, was 50 feet wide and 135 feet deep and had located thereon a three story brick house which was an old Romanesque Victorian style structure that was built about 1884. The property was located in South Central St. Louis City in an area known as Compton Heights.

Appellant's first point is that the trial court "abused its discretion in excluding the testimony of * * * Gerhardt Kramer as to his competency to testify [a] to value of historic homes and [b] as to the comparability of other property to the home in question." Appellant asserts in her brief that Mr. Kramer had been buying "similar old historic homes" and knew "what people will do and pay for them and what is entailed if one purchases such homes for restoration." She asserts that the court erred in not permitting testimony to establish a "comparative basis" between appellant's property and two other places known as the DeMenil House and the Hanley House.

Before we examine the testimony of Gerhardt Kramer, we shall set forth a few basic rules applicable to this case. Here we have a total taking; not a partial taking where the measure of just compensation is the difference between the fair market value of the landowner's property immediately before and immediately after the taking. Just compensation for this taking, generally speaking, is to be measured by what a reasonable buyer would give who was willing but did not have to purchase, and what a reasonable seller would take who was willing but did not have to sell. *In Re Amory Site in Kansas City*, 282 S.W.2d 464, 465 (Mo.1955). In determining the just compensation to which the owner is entitled the jury may consider uses of the land for which it is reasonably suitable having regard to the existing conditions of the community, or such other conditions as may reasonably be expected in the future. *State ex rel. State Highway Commission v. Cox*, 336 Mo. 271, 77 S.W.2d 116 (1934).

Gerhardt Kramer was an architect who had specialized in the restoration of old homes. He was one of the founders of Landmarks Association of St. Louis, an organization devoted to the restoration and preservation of old historic buildings and sites. He was familiar with appellant's property and he described it as being in "mint condition." He testified that in his opinion the "fair market value" of the property on December 17, 1968, the date of taking, was 60 to 70 thousand dollars, but he later commented that the determination of the fair market value "is supposedly a little bit out of my line." As a result of this comment the trial court stated that it would permit appellant's counsel to "qualify the witness further." He subsequently testified that his estimate of 60 to 70 thousand dollars as the fair market value was what he believed would be paid for it in an "arm's length transaction."

We now reach the only objections to his testimony which were sustained, but certain background information is essential. Mr. Kramer testified that from 1945 he had been involved on "a first-hand basis" with the purchase of about 25 period homes, and that some homes have a market value "because of what they are and what their background was historically." He then stated that his previous estimate of value of appellant's property at 60 to 70 thousand dollars was based on what he thought "would be paid in the market place by someone who is interested in this kind of house," or "what someone would pay for the building as it was as of the date [of taking] without restoration." He also stat-

ed since the house was in "mint condition," for anyone interested in buying the house as a period house for private use or for some other person, there would "not that [he] saw" have been any cost of restoration or rehabilitation. He further stated that his only interest in restoration "is the actual building construction," and that he did not concern himself with interior furnishings, which is the field of an interior decorator. The following then occurred:

Q. [by Mr. Carter] Could you tell the jurors about some of these houses so that they can understand what you are talking about with regard to economics in restorations and what is involved with this with people who are interested in these types of homes?

A. Well, the DeMenil House, cost us something—

MR. BAKER: Objection, your Honor.

THE COURT: I will sustain the objection to that.

THE WITNESS: But the Hanley House—

MR. BAKER: Objection, your Honor. The witness—

THE COURT: I will sustain it as to the Hanley House.

There was no offer of proof, and we cannot determine with any confidence exactly what the testimony would have been if the witness had been permitted to answer. This deficiency alone would justify ruling the first point against appellant. See *Hays v. Western Auto Supply Company*, 405 S.W.2d 877, 881 (Mo.1966), where it was held that "Nothing is preserved for appellate review when a court rejects evidence, in the absence of an offer of proof * * *, except in instances where the plain error rule * * * is applicable." See also *Elliott v. Richter*, 496 S.W.2d 860 (Mo.1973); *Barnett v. Scholz*, 496 S.W.2d 812 (Mo.1973); and *Madget v. Jenkins*, 461 S.W.2d 768 (Mo.1971).

We probably would be justified in assuming that the witness was going to relate the restoration costs of other houses, particularly the two mentioned. Assuming this could for some reason have been relevant, appellant's property was in "mint condition" and needed no restoration, and the opinion of the witness as to fair market value was based on that assumption. Therefore, the cost of restoration of other houses was not material to any issue in this case.

Turning back to the precise wording of appellant's point, there is nothing to indicate that the trial court excluded testimony of Mr. Kramer "as to his competency to testify to value of historic homes," and we can not determine that it excluded any material testimony "as to the comparability of other property." At most, it may have prevented testimony concerning the restoration costs of other houses for special purposes when such restoration costs were not material to any issue in this case. We find no merit to appellant's first point.

The second point is that the court "abused its discretion by continually and repeatedly commenting on the defendant's testimony," and that it thereby prejudiced her case. The term "testimony" apparently is used in the sense of "evidence" because in argument appellant does not refer to testimony by her but only to incidents occurring during the testimony of her witnesses John McCarthy and Charles Barr.

Although the point is insufficient to present any issue for appellate review, Rule 84.04(d), we have looked at what we consider to be the incidents referred to, and we find no error.

Reference is made in argument to only one page of the transcript containing testimony of Mr. McCarthy. During direct examination of Mr. McCarthy, respondent's counsel asked to "voir dire" the witness who had previously made reference to two houses located in St. Louis County. During that voir dire examination the court asked: "How can you, for the purpose of this proceeding Mr. McCarthy, compare a frame home on Laclede Station Road in St. Louis County or a one and a half story brick home with a 3-story brick home in Longfellow?" After a discussion counsel for appellant said: "No one ever contended they were comparables." Further testimony by the

witness was permitted on the basis that he was not referring to them as comparable to appellant's property, but that "They served only as a guide to check the other approaches that I attempted to use in the valuation of the property." We find nothing improper with this inquiry by the court.

Appellant also argues that "at a later stage in the trial and for rebuttal, the defendant put on Mr. Charles Barr and at the outset of [his] testimony, the court volunteered that [his] testimony was not rebuttal." It is claimed that this gave "the impression to the jury that Mr. Barr had nothing to add or detract from a rebuttal of the State's testimony where in fact he would have testified that in his opinion * * * the homes in the areas where 1724 Longfellow was located were more expensive." This, of course, is speculation because there was no offer of proof.

Mr. Thomas O'Toole, a witness for the State, had testified that a house recently purchased by Mr. Barr for $22,000 was comparable to appellant's property. When Mr. Barr was testifying on rebuttal, he stated that when he purchased his house it was in "good condition." The court said: "Well, it is my impression Mr. O'Toole said it was in good condition. Mr. O'Toole classified Mr. Barr's house as in good condition. He [Mr. Barr] testified it was in good condition. Now, is that rebuttal?" Under the circumstances we see nothing improper by this question.

We have read carefully all the testimony of Mr. McCarthy and Mr. Barr, and in addition to finding appellant's charges of improper conduct on the part of the trial court to be totally without merit, we are impressed by the patience displayed by the court in its rulings.

█ Appellant's final contention is that the trial court abused its discretion "in preventing [appellant] from cross-examining [State's witness O'Toole] on the relationship of [his] testimony that the neighborhood * * * was declining and the effect of the condemnation proceeding."

Mr. Thomas J. O'Toole, an expert witness on real estate values, testified for the State that in his opinion the fair market value of appellant's property as of the date of taking was $20,000. He also testified concerning the physical features of the property, and that it was located in a "declining" neighborhood. During cross-examination of this witness counsel for appellant wrote some words on a blackboard, including the word "delay." After a request by State's counsel that the words be erased from the board, and some discussion was held between court and counsel, the court said: "The question is what the delay of Highway 44 has got to do with the valuation of the property in question." The following occurred:

> MR. CARTER [appellant's counsel]: Your Honor, I ask permission to be allowed to go into this area to show that there is a causal connection between this considerable delay and what Mr. O'Toole says as to the declining neighborhood and that causal connection was caused by the State Highway Department.
>
> THE COURT: You will be permitted to do that. Proceed.
>
> MR. BAKER: I will object to that as irrelevant and immaterial your Honor, and incompetent under the laws—
>
> THE COURT: The objection is overruled. I will permit him to do this.
>
> Q. (by Mr. Carter) Mr. O'Toole, once the Highway Department announces that it is going to take part of some area, some neighborhood, insofar as property within that is concerned, you can't buy or sell it to anyone, can you, for all practical purposes?
>
> MR. BAKER: I object to that your Honor. There has been testimony that the house right next door sold just less than 3 years before the taking.
>
> THE COURT: I will permit him to—
>
> MR. BAKER: —it is totally irrelevant and immaterial to any issue in this case.
>
> THE COURT: Let me ask you this Mr. O'Toole: do you consider that in your evaluation of the property?
>
> THE WITNESS: No, sir.
>
> THE COURT: All right. On those grounds, it is sustained.

Q. (by Mr. Carter) You were saying Mr. O'Toole, that you exclude all factors of depreciation because of the delay brought about by the Highway Department, do I understand you to say that?
A. Yes, I do.

There was no offer of proof, and as previously noted, for this reason alone the contention could be ruled against appellant.

In her brief appellant states that she hoped to show "a casual relationship between the neighborhood as it was without the threat of condemnation and the neighborhood as it was on the day of taking," and she also argues that she should have been allowed to "cross-examine the credibility of the [State's] expert witness on his short statement that he did not take the event of the highway project into account in making his appraisal."

Appellant cites and relies on *Land Clearance for Redevelopment Authority v. Morrison*, 457 S.W.2d 185 (Mo.banc 1970). However, in that condemnation case the landowner filed a counterclaim for damages in which he alleged that the condemnor had wrongfully exercised dominion over his property prior to the date of taking and by doing so had reduced its value. It was held that the use of the counterclaim in an attempt to obtain damages for this alleged wrong was permissible. That is not the factual situation of this case. Appellant did not file a counterclaim, and there was no contention that the Highway Commission had committed any tortious acts prior to the time of taking which affected the value of the property.

In the absence of an offer of proof we must speculate as to what evidence appellant sought to present. However, we consider it fairly evident that she wanted to develop by cross-examination that a delay in the construction of the highway after its proposed location was made public affected the market value of appellant's property. There is nothing to indicate that appellant contends the delay was a result of improper conduct, and in any event there was no counterclaim based on any wrongful conduct in relation to appellant's property. By reason of *St. Louis Housing Authority v. Barnes*, 375 S.W.2d 144 (Mo.1964), and *State ex rel. City of St. Louis v. Beck*, 333 Mo. 1118, 63 S.W.2d 814 (Mo.banc 1933), the determination of the value of the condemned property is made in a *condemnation proceeding* as of the date of the taking, and in the *Land Clearance* case it is clear that any claim for damages resulting from wrongful conduct of the condemnor which affected adversely the value of the landowner's property prior to the taking is a matter for separate proceedings. For this reason the result of the delay, if any, in the construction of the highway was not material to the issue of just compensation.

We do not rule that appellant should not have been permitted to cross-examine Mr. O'Toole as to the various matters he took into consideration in arriving at his opinion of just compensation for the taking. But, appellant did not advise the trial court of this purpose, if it was then the purpose, and we are not to hold a trial court in error for not permitting an examination not requested. Perhaps an offer of proof would have so advised the trial court, but as previously noted, that procedure was not followed.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.