MARCUS LOHSE AND PETER MILLER, Respondents, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant

### Kansas City Court of Appeals, April 27, 1891.

1. **Condemnation Proceedings:** DISCONTINUANCE OF: INSTRUCTION: EVIDENCE. The evidence in this case is *held* sufficient to justify an instruction authorizing the jury to award damages for the interference with plaintiff's business—burning lime—by reason of defendant's proceedings to condemn a right of way over plaintiff's premises, said proceedings having been continued after assessment of damages for near two years, and then dismissed.

2. ———: ———: DAMAGES. A railway company, in the exercise of the right of eminent domain, may not, after appraisement, decline to deposit the damages with the clerk and continue the proceedings on exceptions indefinitely, without liability for the consequences of such continuance to land-owner.

3. ———: ———: EXCESSIVE DAMAGES. A careful analysis of the evidence fails to show that the damages assessed by the jury were excessive.

*Appeal from the Cooper Circuit Court.—*HON. E. L. EDWARDS, Judge.

AFFIRMED.

*H. S. Priest* and *Wm. S. Shirk*, for appellant.

(1) The first and second instructions for the plaintiff should not have been given. There is no evidence whatever in support of that portion of these instructions which permits the jury to allow the plaintiffs damages, on account of interference with the plaintiffs' use of the premises, or the prosecution of their business thereon. (2) The verdict of the jury is contrary to the instruction of the court given on defendant's behalf, and in contempt of the same. Defendant's said instruction declares in emphatic terms that plaintiffs were not entitled to recover for any abandonment or suspension of business conducted by them upon their said property, during the time the damages assessed by the commissioners were not deposited with the clerk. It is conceded that the damages awarded by the commissioners were never deposited with the clerk. (3) The verdict of the jury is grossly excessive, and a new trial should have been granted on that account. As stated in point 3, the total damages, outside of those resulting from a suspension of business and a failure to buy fuel and cooperage in large lots, only amounted to $310. Add to this $75 lost by buying cooperage in small lots, and $100 lost in buying fuel in small lots, and we have a

total of $485. The verdict was for $650. It follows that it exceeded the total damages shown, under any view of the evidence, in the sum of $165.

*Cosgrove & Johnson*, for respondents.

(1) The first and second instructions given for plaintiffs were correct. They were authorized by the evidence and by the law. *Liesse v. Railroad*, 2 Mo. App. 105 ; 72 Mo. 561 ; *Gibbons v. Railroad*, 40 Mo. App. 146. (2) The instruction given by the court on behalf of defendant is not the law. According to it the railroad company could have held these proceedings for condemnation in the courts for years, with the right to deposit the amount of the assessed damages at any time and take possession, thus leaving the owners all the time in doubt as to how long they could remain in possession, and thereby practically deprive them of the use of their property, as was done in this case. Although it may be true that plaintiff's third instruction given by the court conflicts with the instructions given on behalf of defendant, yet, if the latter instruction is not warranted by law, such conflict furnishes no ground of complaint on the part of defendant. "A party, at whose instance an objectionable instruction was given, cannot complain of its supposed inconsistency with a proper instruction given for the adverse party." *Blackwell v. Bailey*, 1 Mo. App. 328. The verdict of the jury is not excessive, but is fully warranted by the evidence.

SMITH, P. J.—The Missouri Pacific Railway Company, on the twenty-sixth of May, 1887, commenced proceedings to condemn certain lots of the plaintiffs in the city of Boonville for railway purposes. An award was made by the commissioners appointed by the court to which the railway filed exceptions. The proceedings were continued on the exceptions until February, 1889, when the same were dismissed by the railway company. This action was thereupon brought against the railway

company by plaintiffs to recover damages by them sustained by reason of the condemnation proceedings. The items of these damages were that prior to the institution of the condemnation proceedings the plaintiffs were using their premises with the improvements thereon in the business of manufacturing, shipping and selling lime ; that the railway company had given out that it proposed to, and would, locate its railway over and across the lots of the plaintiffs; that, in consequence of the condemnation proceedings, the plaintiffs were deprived of the use of their property for six months ; that they were prevented from using and operating their limekiln, and so hindered in their business ; that their property was virtually condemned, idle and useless ; that they were put to much trouble, expense and annoyance by the proceedings ; were obliged to employ counsel at great cost, etc., for all of which they claimed $1,000 damages.

The answer was a general denial. The evidence and instructions will be noticed presently. The plaintiffs had judgment for $650, and the railway company has appealed.

I.   The appealing defendant contends that the part of the instruction of the plaintiffs which authorized the jury to allow plaintiffs damages on account of the interference with their use of the premises, or the prosecution of their business thereon, should not have been given. While the evidence in this regard is not as ample and clear as it might have been, we cannot say there was no evidence to authorize the giving of this part of the instruction. It tends to show that, in consequence of the condemnation proceedings and the threat of subjecting the property to the use of the defendant's roadway, the plaintiffs were for several months greatly hindered and disconcerted in their business of manufacturing and producing lime for the market ; their output, in consequence thereof, was greatly diminished ; there was a paralysis and shrinkage

in their business and income therefrom ; they dared not run their plant to its greatest producing capacity as long as they continued to apprehend the execution of the defendant's threat to take their property. For this injury and hinderance to them there was evidence before the jury to warrant the part of the instruction complained of.

II. The defendant complains that the verdict of the jury was contrary to the instruction given for it, which declares that the plaintiffs were not entitled to recover for any abandonment or suspension of business conducted by them on their property between the time damages were assessed by the commissioners and the discontinuance of the condemnation proceedings. This instruction is in conflict with plaintiffs' first. But the defendant's instruction was erroneous. The jury disregarded it, and found in accordance with the plaintiff's first instruction. This instruction proceeds upon a notion that a railway company, in exercising the right of eminent domain, may, after the appraisement, decline to deposit the damages with the clerk, and continue the proceedings on exceptions indefinitely or at its pleasure, without liability for the consequences of such continuance. This would be to sanction the grossest abuse and misuse of this great power. To say that a railway corporation is authorized by law to hold this Damoclean sword over the head of a property-owner indefinitely or as long as it would be its interest to do so, would be monstrous. The property against which the proceedings are begun may be a flouring mill, packing house, brewery, pottery, brick yard or other industrial establishment, and the railway company might suspend the condemnation proceedings until the owner of such property is coerced into accepting a price that may suit the company, or into selling to some one who knows the proceedings will be discontinued at a ruinous sacrifice and, failin g to coerce the property-holder, it may then dismiss its proceedings and escape all liability.

The continuing menace of the railway company to subject the property to its use may have resulted in the greatest depreciation to it or have practically rendered it or the business carried thereon of no use or value, still the instruction declares, as the railway did not pay the damages, and take the property it incurred no liability whatever. The instruction, in its enunciation, is at variance with the principle declared and applied in the analogous case of *Leisse v. Railroad*, 2 Mo. App. 105 ; 72 Mo. 561 ; also in *Gibbons v. Railroad*, 40 Mo. App. 146. And being erroneous, the fact that it is inconsistent with those of plaintiffs, which are conceded to be unexceptionable, constitutes no ground for disturbing the judgment. *Blackwell v. Bailey*, 1 Mo. App. 328.

III. A rather careful analysis of the evidence has failed to satisfy us that the damages are excessive. The jury, under the evidence, might have found even a larger amount of damages. The defendant contends that the verdict was for $163 in excess of what was justified by the evidence, but we cannot discover this contention as well founded. We are unable to perceive any error in the record, beyond that committed in favor of the defendant, and of which it cannot be heard to complain.

ˈThe judgment will be affirmed. All concur.