66, INC., Plaintiff/Appellant/Cross–Respondent,

v.

CRESTWOOD COMMONS REDEVELOPMENT CORP., and Hycel Partners III, L.P., and Shnuck Markets, Inc., Defendants/Respondents/Cross–Appellants.

Nos. ED 81094, ED 81218.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 19, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2003.

Case Transferred to Supreme Court Nov. 25, 2003.

Case Retransferred to Court of Appeals April 27, 2004.

Original Opinion Reinstated May 5, 2004.

---

See also 882 S.W.2d 319; 897 S.W.2d 203.

Martin M. Green, Joe D. Jacobson, Green Schaaf & Jacobson, P.C., Clayton, for appellant.

Thomas C. Walsh, Dan M. Lesicko, Bryan Cave LLP, St. Louis, Gerard T. Carmody, Carmody MacDonald, P.C., Clayton, William J. Travis, Greensfelder, Hemker & Gale, P.C., St. Louis, for respondents.

KATHIANNE KNAUP CRANE, Judge.

This consolidated appeal arises from a lawsuit brought by an owner of commercial property to recover damages for abandonment of condemnation against a redevelopment corporation and its joint venture owners. The trial court entered a judgment of $392,612 in the property owner's favor.

Plaintiff, the commercial property owner, claims that it should have been awarded additional items of damages as follows: $2,291,105.12 in interest paid on a loan secured by the property from November 29, 1989 to November, 1993; $60,000 in lease termination payments paid prior to the filing of the underlying condemnation action; and prejudgment interest on the damages attributed to interest payments and real estate taxes. Plaintiff also contends that the trial court erred in not including in its judgment, by reason of an offset, the $47,174 in mortgage interest payments made by plaintiff from September 13, 1989 to November 1, 1989, and in reducing the award of attorney's fees by $112,764 deemed to have been previously included in the statutory interest awarded to plaintiff in the condemnation action.

Defendants contend that the trial court should not have awarded plaintiff any damages because plaintiff did not suffer any loss in that plaintiff profited after abandonment by the November, 1993 sale of the property to National Supermarkets for $7,934,500. In the alternative, defendants assert that the trial court erred in awarding plaintiff $136,507 in attorney's fees for work performed in this case and $90,058 for real estate taxes paid while the condemnation was pending. Defendants further contend that the trial court erred in awarding $278,811 in attorney's fees for defense of the condemnation action because that amount included work on other matters, which was not recoverable. Finally, defendants claim that the trial court failed to reduce the damages awarded plaintiff by the amount of all statutory interest previously awarded and paid.

On plaintiff's appeal we hold that the trial court erred in reducing the judgment in this case by $112,764 and order that amount reinstated in the judgment. On defendant's appeal we hold that the trial court erred in awarding plaintiff $90,058, representing real estate taxes, and $136,507, representing attorney's fees in this action, and reverse that part of the judgment that awards those amounts. We also hold that the trial court erred in including in its award of attorney's fees in defense of the underlying condemnation case the fees incurred in a separate declaratory judgment action between the city in which the property was located and a competing developer and the fees incurred in developing the property for sale. We reverse that part of the judgment awarding those fees and remand to the trial court to determine the amounts of those fees and to deduct them from the judgment. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *The Parties and the Efforts to Acquire and Develop Movie Theater Property*

Plaintiff, 66, Inc.[1], is a wholly-owned subsidiary of Ronnie's Enterprises, Inc. Ronnie's Enterprises, Inc. and Wehrenberg, Inc. (Wehrenberg) are two companies within the greater "Wehrenberg Family of Companies," both of which are owned by Ronald Krueger and the Gertrude Wehrenberg Trust. Plaintiff leased and operated a parcel of commercial property (the property) located in the City of Crestwood, Missouri (the City), as a drive-in movie theater. An ordinance blighting the property was introduced and read for the first time at the City's March 8, 1988 aldermanic meeting. On March 18, 1988, with knowledge of the pending blighting

ordinance, plaintiff entered into a contract with its lessor to purchase the property for $3.5 million. In April, 1988, the City passed an amended blighting ordinance and sought bids for redevelopment.

Emmis Broadcasting, operator of KSHE radio, subleased a portion of the property from plaintiff as the site for its broadcast antennae. In 1988, after plaintiff contracted to purchase fee ownership of the property from the lessor, plaintiff contracted with Emmis to buy out Emmis's leasehold interest before the lease's April, 1991 termination date in order to better facilitate the sale or development of the property. The lease termination agreement required plaintiff to make two payments to Emmis of $30,000 each. The first payment was due in 1988 and the second in 1989. Plaintiff made both payments before the condemnation action was filed.

On June 22, 1988, plaintiff entered into a contract to sell the property for $7.2 million to Daniel Devereux, Joseph Pottebaum, and Robert Kaplan. The contract was contingent upon the City's selection of the redevelopment plan proposed by Crestwood Festival Associates (Festival), one of three developers to submit proposals to the City.

Defendant, Crestwood Commons Redevelopment Corp. (Commons), is a Chapter 353 urban redevelopment corporation formed on June 24, 1988 by a joint venture general partnership between defendants Schnuck Markets, Inc., and Hycel Partners III, L.P. Commons, Festival, and Centennial Development Company each submitted a development plan to the City in July, 1988.

Following three public hearings on each of the development plans, the City approved Commons' development plan on September 6, 1988. Because Festival's

---

1. 66, Inc. is the former 66 Drive–In, Inc.

plan was not selected, the contract between plaintiff and Devereux, Pottebaum and Kaplan terminated.

On November 28, 1988 plaintiff closed on its contract to purchase the fee interest from its lessor. Plaintiff financed the purchase price with a $3.5 million loan from Mercantile Bank. Commons then entered into negotiations with plaintiff to purchase the property, but the parties could not agree on a purchase price.

On March 9, 1989 plaintiff entered into a contract to sell the property to Festival in exchange for $7 million plus a ten-percent limited partnership interest in Festival to Mr. Krueger. This contract was scheduled to close on September 13, 1989.

On April 5, 1989, the City's Planning, Zoning, and Architectural Review Commission recommended that the Board of Aldermen approve a special use permit for plaintiff, Festival, and Festival's architect. Instead, six days later, the Board of Aldermen passed an ordinance granting Commons the power of eminent domain so that it could complete its development plan. Commons was given the power of eminent domain on July 11, 1989, and the City entered into a development agreement with defendants on that date.

## II. *The Underlying Condemnation and Contemporaneous Events*

On July 13, 1989, Commons filed a petition in the circuit court to condemn the property. On September 5, 1989 plaintiff moved to dismiss the petition on the grounds that the ordinance was invalid.

In October, 1989 the trial court entered a judgment against Commons on its condemnation action, which we reversed in June, 1991. *Crestwood Commons v. 66 Drive–In, Inc.,* 812 S.W.2d 903 (Mo.App. 1991) (Crestwood I). On December 16, 1991 the appointed commissioners valued the property at $7,399,990. Plaintiff and Commons filed exceptions to the commissioners' determination and requested a jury trial on the value of the property.

While the condemnation action was pending, three other events occurred which are relevant to the issues on appeal. We describe them below.

### A. *Declaratory Judgment Action*

The City approved a special use permit to Festival, Festival's general partner, and plaintiff on September 12, 1989 to develop the property although, at the time, the City had previously granted eminent domain powers to defendants and the condemnation action was pending. Because of this situation, the City stipulated that it would not issue the permit until a court entered a final judgment declaring that (1) the grant of the special use permit would not breach the Development Agreement between Commons and the City, and (2) the denial of the special use permit, on the grounds that Commons had been granted development rights and power of eminent domain, violated the rights of Festival, Festival's general partner, and/or plaintiff. The City subsequently filed a declaratory judgment action against Festival. The record on appeal does not disclose when the action was filed or how it was resolved. The attorneys who represented plaintiff in the underlying condemnation action also represented Festival in the declaratory judgment lawsuit.

### B. *Contract Extension Payments*

Between September, 1989 and June, 1990, plaintiff entered into eleven contract amendments with Festival extending the closing date on the property because of the pending condemnation. Beginning with the seventh amendment, Festival paid $2000.00 per day for the contract extensions. The eighth amendment also increased the cash portion of the sale price

from $7,000,000 to $7,600,000. The eleventh amendment extended the closing date to July 31, 1990. After the last extension, Festival's general partner began experiencing financial problems and did not extend the closing date. The contract expired at the end of the July 31, 1990 extension. Festival paid approximately $182,000 in contract extension payments to plaintiff.

### C. *Mark Twain Loan*

On November 1, 1989, plaintiff used the property as security for a $5,850,000 loan from Mark Twain Bank. Plaintiff used the proceeds of the Mark Twain loan to pay off its prior loan with Mercantile Bank, and then used the remaining $2,266,587.99 to make a loan to Wehrenberg so that Wehrenberg could acquire the General Cinema chain of theatres in St. Louis and Springfield, Missouri (the General Cinema acquisition). Plaintiff made the interest payments on the Mark Twain loan. Wehrenberg subsequently paid off this loan in full in December, 1992, as well as the accumulated interest at the same rate plaintiff paid Mark Twain Bank.

### III. *Abandonment and Statutory Interest Award (the interest action)*

Shortly before the trial on the exceptions was to begin, on July 10, 1992, Commons dismissed the condemnation suit, thereby abandoning it. Plaintiff then filed a motion for an award of statutory interest pursuant to section 523.045 RSMo (1986). In its motion plaintiff alleged that the condemnation had prevented plaintiffs from selling the property and caused it to incur needless loss and expense. At the hearing on its motion, plaintiff adduced evidence that, between December 16, 1991, the date of the commissioners' award, and July 10, 1992, the date of abandonment, it paid $340,926.14 in interest payments to Mark

Twain Bank. Plaintiff's president, Mr. Krueger, testified that, as a consequence of the commissioner's award, he was unable to sell the property. Although Mr. Krueger also testified that he paid attorney's fees during this time period, plaintiff did not introduce any evidence on the amount, nature, or purpose of those fees. In June, 1993 the trial court found plaintiff was entitled to interest because the proceeding affected its ability to sell the property and it suffered monetary losses. It awarded plaintiff statutory interest in the amount of $250,582.55, which judgment we affirmed in August, 1994. *Crestwood Commons v. 66 Drive–In, Inc.*, 882 S.W.2d 319, 321–22 (Mo.App.1994) (Crestwood II).

### IV. *Action to Recover Damages for Abandonment (the damage action)*

In November, 1992, while the motion for statutory interest was pending, plaintiff filed the lawsuit that is the subject of this appeal. It originally sought specific performance of the Development Agreement between Commons and the City and requested that the condemnation be completed. However, after the trial court awarded plaintiff statutory interest, plaintiff, which had continued to operate the movie theatre on the property, sold the property to National Super Markets in November, 1993 for approximately $7,934,500. As a result, in August, 1994, plaintiff filed an amended petition that sought damages suffered as a result of the abandonment from Commons, Schnuck and Hycel (hereinafter, collectively, defendants).

Defendants filed a motion for summary judgment, which the trial court granted in December, 1997. The Missouri Supreme Court subsequently reversed. *66 Inc., v. Crestwood Commons Redevelopment*, 998 S.W.2d 32 (Mo. banc 1999) (Crestwood

IV).[2] The supreme court held that plaintiff stated a claim for common law damages suffered as a result of the abandonment and defendants Schnuck and Hycel, as the *alter ego* of defendant Commons, were liable for any claims against Commons. *Crestwood IV*, 998 S.W.2d at 42–43. The supreme court held that plaintiff would be "entitled as a matter of right to recover attorney's fees and other reasonable expenses and losses suffered as a result of a private condemnor's abandonment of the condemnation." *Id.* at 40. The supreme court remanded the case to the trial court to resolve the damages. In determining the damages suffered by plaintiff, the supreme court left it to the trial court "to avoid duplicative recovery if damages claimed in the wrongful abandonment claim overlap the interest award provided by section 523.045, if that interest judgment has been paid." *Id.* at 40.

Following the supreme court's decision, defendants paid plaintiff $391,912.26 in satisfaction of the statutory interest award, including post-judgment interest.

## V. Trial Court Proceedings After Remand

### A. Summary Judgment

After remand, both parties filed motions for summary judgment on the legal issue of what types of damages claimed by plaintiff were included in "other reasonable expenses and losses suffered as a result" of the abandonment. Defendant requested summary judgment in its favor on the damages determined to be excluded. Plaintiff sought summary judgment on those damages found to be included and the amounts of which were not in controversy.

The trial court sustained in part and denied in part each of the parties' motions. The court determined that plaintiff would not be entitled to recover the $98,594.00 plaintiff paid in "sunk costs" to prepare the property for redevelopment, the interest payments on the Mercantile loan prior to September 13, 1989, real estate taxes incurred prior to September 13, 1989, the interest payments plaintiff made on its loan from Mark Twain Bank, or prejudgment interest.

The parties agreed that plaintiff was entitled to attorney's fees in the underlying condemnation action, but that the amounts of those fees would be litigated at trial. The court determined that plaintiff could recover its reasonable attorney's fees in the damage action under the "collateral litigation and/or benefits balancing exception(s) to the general rule against recovery" of attorney's fees. The court further concluded that defendants were entitled to reduce the amount of damages on abandonment by part of the award in the interest action. The court also reserved for trial a determination of the type and amount of damages that had been awarded at the statutory interest hearing.

The court further held that, if the Festival contract would have closed on September 13, 1989, but for the condemnation proceeding, then plaintiff would be allowed to recover the mortgage payments to Mercantile Bank made after September 13, 1989 until it was paid off in November, 1989 and the real estate taxes paid after September 13, 1989, to the extent they

---

**2.** While the statutory interest award was on appeal and the damage action was pending, plaintiff filed a separate "guaranty" action against Schnuck and Hycel in January, 1994 for payment of the interest judgment because

Commons had no assets. The trial court dismissed the guaranty action in August, 1994, which we affirmed. *66 Drive–In, Inc. v. Hycel Partners III, L.P.*, 897 S.W.2d 203 (Mo.App. 1995). (Crestwood III)

exceeded the revenue from the drive-in operations.

## B. *Bench Trial and Judgment*

The amounts of the items of damages that the court determined on summary judgment would be allowed were subsequently tried to the court. In its judgment the court awarded plaintiff $278,811 for its attorney's fees in defense of the condemnation action, which amount included fees paid to defend Festival in the declaratory judgment action brought by the City and those paid to develop the property for sale, and $136,507 for its attorney's fees in the damage action. The court found that plaintiff made $47,174 in mortgage interest payments to Mercantile Bank between September 13, 1989 and November, 1989, but was not entitled to recover this amount because plaintiff had received $182,054 in contract extension payments. On plaintiff's claim for damages for real estate taxes paid between September 13, 1989 and November, 1993, the court awarded $90,058. The court concluded that plaintiff had thus established total damages of $505,376. However, the court determined that forty-five percent of the award in the interest action, or $112,764.00, represented attorney's fees, and reduced the damage figure by that amount, resulting in a judgment of $392,612 in plaintiff's favor.

## DISCUSSION

### I. *Introduction*

In *Crestwood II* we affirmed the award of statutory interest to plaintiff representing its loss of use of the condemnation award while the condemnation action was pending, because plaintiff had shown that the condemnation proceedings had interfered with its ability to sell the property. 882 S.W.2d at 321–22. In *Crestwood IV* the Missouri Supreme Court held that this award does not supercede a common law claim for attorney's fees and other reasonable expenses and losses. 998 S.W.2d at 40. The resolution of this appeal turns on the question of whether the individual items of damage claimed in the trial court were properly a part of the common law damage claim.

We hold that the interest paid to Mark Twain Bank, the lease termination payments, mortgage interest paid to Mercantile Bank, and the real estate taxes are not damages that can be awarded in the damage action because these items of damage do not fall within the category of attorney's fees, costs, and reasonable expenses and losses historically recognized as damages in the common law damage claim. Further, plaintiff was fully compensated in the interest action to the maximum amount permitted by statute for any effect the condemnation had on its ability to sell the property. Since these items are not recoverable items of damages, the trial court did not err in denying prejudgment interest on these items of damage.

We further hold that plaintiff was entitled to recover attorney's fees for the defense of the underlying condemnation action, but the award of those fees erroneously included fees for the defense of Festival in the declaratory judgment action brought by the City and fees for land development. Further, the amount of the fees awarded for the defense of the underlying condemnation action should not have been offset by part or all of the award in the interest action, because attorney's fees were not an element of damage in the interest action. We also hold that plaintiff is not entitled to an award of attorney's fees in the damage action, because those fees do not fall within any exception to the "American Rule."

## II. *Standard of Review*

Three of plaintiff's points are based on the grant of summary judgment in defendants' favor and raise questions of law that we review *de novo*. American Standard Ins. Co. v. Hargrave, 34 S.W.3d 88, 89 (Mo. banc 2000). Two of defendants' points challenge the trial court's award of attorney's fees. Assuming it has the authority to make such an award, a trial court has broad discretion in awarding attorney's fees. Consol. Public Water Supply v. Kreuter, 929 S.W.2d 314, 316 (Mo.App.1996); Washington Univ. v. Royal Crown Bottling, 801 S.W.2d 458, 469 (Mo. App.1990). We will not reverse a trial court's determination of the amount of fees unless the award is arbitrary or is so unreasonable as to indicate indifference and lack of proper judicial consideration. Distler v. Reuther Jeep Eagle, 14 S.W.3d 179, 186 (Mo.App.2000). However, the trial court's authority to award fees is a legal question that we review de novo, and we do not defer to the discretion of the trial court on this matter. *Kreuter,* 929 S.W.2d at 316.

The remainder of the parties' points assert error in the trial court's award of damages in its judgment after the bench trial. Because this was a court-tried case, we review pursuant to *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares the laws or it misapplies the law. *Murphy,* 536 S.W.2d at 32. The proper *measure* of damages is a question of law, Gee v. Payne, 939 S.W.2d 383, 385 (Mo. App.1997), which we review *de novo. H & B Masonry Co., Inc. v. Davis,* 32 S.W.3d 120, 124 (Mo.App.2000). When a trial court has determined the amount of damages under the proper legal standards, we give those findings great weight on appeal and we will not disturb the award unless it is shown that the damages awarded were clearly wrong, could not have been reasonably determined, or were excessive or grossly inadequate. *Iota Management v. Boulevard Inv. Co.,* 731 S.W.2d 399, 419 (Mo.App.1987).

If the trial court's judgment is sustainable on any ground, we will not overturn it on appeal. *Lough. v. Rolla Women's Clinic,* 866 S.W.2d 851, 852 (Mo. banc 1993). We will not set aside a bench-tried judgment that reaches a correct result, even if the trial court gives a wrong or insufficient reason for its judgment. *Fix v. Fix,* 847 S.W.2d 762, 766 (Mo. banc 1993); *Graue v. Mo. Property Ins. Placement,* 847 S.W.2d 779, 782 (Mo. banc 1993).

Rule 84.04(e) limits the argument under each point to those errors included in the point relied on. Accordingly, we determine only those questions set out in the point. *Boatmen's Bank v. Foster,* 878 S.W.2d 506, 509 n. 4 (Mo.App. 1994). As a result, we consider all arguments encompassed by each point, but we do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point. *Mullenix–St. Charles Props. v. City of St. Charles,* 983 S.W.2d 550, 559 (Mo.App. 1998). An appellant must develop the contention contained in the point in the argument, and failure to support or develop claims of error in the argument portion of the brief results in abandonment of that point of error. *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App.1996). A reply brief is solely to be used to "reply" to a respondent's arguments and not to raise new points on appeal. *Kramer v. Mason,* 806 S.W.2d 131, 134 (Mo.App.1991). Accordingly, we do not review an assignment of error made for the first time in the reply brief. *Jos. A. Bank Clothiers, Inc. v.*

*Brodsky,* 950 S.W.2d 297, 304 (Mo.App. 1997). Further, we cannot consider exhibits or portions thereof that were not made part of the trial court record. *Parker v. Parker,* 971 S.W.2d 878, 880 (Mo.App. 1998).

## III. *Damage Issues*

### A. *Underlying Legal Theories*

 It is well-established that a condemnor has a right to timely abandon a condemnation. *Missouri State Park Board v. McDaniel,* 513 S.W.2d 447, 452 (Mo.1974). Missouri statutes and Rules 86.06 and 86.08 give a condemnor the right to ascertain the final price of the parcel sought to be condemned and timely abandon a condemnation proceeding if the price is too high. *Washington U. Medical Ctr. Redev. Corp. v. See,* 654 S.W.2d 192, 194 (Mo.App.1983). "The determination of the award is an offer subject to acceptance by the condemnor and thus gives to the user of the sovereign power of eminent domain an opportunity to determine whether the valuations leave the cost of completion within his resources." *Danforth v. United States,* 308 U.S. 271, 284, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939) (citing LEWIS, LAW OF EMINENT DOMAIN, 3rd Ed., section 955).

 Condemnees have no constitutional right to interest or damages on abandonment when there never was a taking of the property and the owner never lost possession. Cottleville v. American Topsoil, Inc., 998 S.W.2d 114, 119 (Mo.App. 1999); *see also Dietsch v. St. Louis County,* 415 S.W.2d 777, 781 (Mo.1967); *Hamer v. State Highway Commission,* 304 S.W.2d 869, 873 (Mo.1957). In the absence of a statute, losses sustained by a landowner when a condemnation is so abandoned are *damnum absque injuria,* for which no damages may be awarded. *Hamer,* 304 S.W.2d at 873.

 However, in Missouri, a property owner may be able to recover from a private condemnor, upon abandonment, attorney's fees, costs, and expenses as recognized in *North Missouri R. Co. v. Lackland,* 25 Mo. 515 (1857) and *Crestwood IV,* 998 S.W.2d at 39. In addition, the enactment of Section 523.045 in 1959 gave the courts discretion to award interest from the time the commissioners' report is filed to abandonment. Although this appeal is from the judgment awarding *Lackland* damages, we start with a discussion of the elements of the statutory interest claim, because issues regarding that claim impact this appeal.

### 1. *Statutory Interest Award*

 Following a timely abandonment more than thirty days after the commissioners' report is filed, a court may award statutory interest to a condemnee under the third sentence of section 523.045. *Crestwood IV,* 998 S.W.2d at 40; *American Topsoil,* 998 S.W.2d at 117. This sentence provides:

> ... If, within thirty days after the filing of any such commissioners' report, the condemnor shall have neither paid the amount of the award to said persons or to the clerk for them nor filed its written election to abandon the appropriation, but shall thereafter timely file such written election to abandon, then the court may, upon motion filed by said persons within ten days after the filing of said election, assess against the condemnor six percent interest on the amount of the award from the date of the filing of the commissioners' report to the date of the filing of such election, enter judgment thereon and enforce payment thereof by execution or other appropriate proceeding.

Section 523.045.

 In the first case to consider the application of this part of the statute and

its constitutionality, the Missouri Supreme Court held that the trial court did not abuse its discretion in awarding interest under this statute when the condemnation proceeding that had been abandoned kept the landowners' property "tied up" in litigation for over three years. *McDaniel*, 513 S.W.2d at 451–52. It held that the allowance of interest on the money a landowner was entitled to receive when the commissioners' report was made "is a provision for interest as compensation for the loss of his right to receive and use the money, awarded by the commissioners as his damages, while the condemnation proceeding is pending." *Id*. Interest is thus the measure by which a landowner's damages are determined when a landowner, who has retained ownership and possession of the property, has nevertheless been deprived of full and free use thereof.

By describing the award of interest as compensation for the condemnee's loss of its right to receive and use the money during the pendency of the proceeding, the court did not create an absolute right in the landowner to receive and use the amount of the award upon the filing of the report when there has been no "taking" and the condemnor ultimately abandons the condemnation. Rather, it was describing the nature of interest allowed by the statute when the landowner has established a right to receive the award[.]

*American Topsoil*, 998 S.W.2d at 118.

■ The third sentence of Section 523.045 recognizes the possibility that a valuable property right may have been invaded or appropriated by the pending condemnation "and gives the trial court the authority to look at the nature of that invasion on a case by case basis, and, in its discretion, award interest if the landowner has been practically deprived of proprietary rights." *American Topsoil*, 998

S.W.2d at 119. Such practical deprivation includes difficulty leasing or selling the property and the threat of loss of any investment made to further develop the property. *Id*. When the trial court has found such a practical deprivation, it may award interest under Section 523.045, consistent with *McDaniel*, to compensate the landowner. *Id*. The purpose of section 523.045 is to compensate a condemnee for "its loss of ability to deal with its property freely." Missouri & Iowa Ry. v. Norfolk & Western Ry., 910 S.W.2d 261, 266 (Mo. App.1995).

■ In sum, Section 523.045 gives courts discretion to award interest representing the loss of use of the condemnation award, when a landowner has shown a practical deprivation of its property rights.

2. *Attorney's Fees and "other reasonable expenses and losses"*

In *Crestwood IV*, the Missouri Supreme Court determined that, in addition to the interest award, a claim also lies for damages for abandonment of condemnation against a private condemnor that arises from general common law principles as expressed in the 1857 *Lackland* case and its progeny. 998 S.W.2d at 39. It held that under common law "the property owner is entitled as a matter of right to recover attorney's fees and other reasonable expenses and losses suffered as a result of a private condemnor's abandonment of the condemnation." *Id*. at 40. It stressed that these damages were different from and in addition to an award of statutory interest.

Because the court did not explain further what was encompassed by the words "other reasonable expenses and losses," we look to *Lackland* and its progeny to determine this issue. In *Lackland*, the Missouri Supreme Court equated "costs and expenses of the landowner" with all of the

"costs of the case and counsel fees" both at trial and on appeal. It has since explained that it imposed the requirement of paying counsel fees in *Lackland* "independent of" statute. *City of St. Louis v. Meintz*, 107 Mo. 611, 615, 18 S.W. 30, 31 (1891); *see also Meadow Park Land Co. v. School Dist. of Kansas City*, 301 Mo. 688, 697, 257 S.W. 441, 445 (1923). In *Meadow Park* the Missouri Supreme Court held that *Lackland* derived from the railroad condemnor's charter setting forth the terms of the condemnation, which contained the following provision:

'In all such cases, the court shall adjudge the costs of the proceedings according to equity; and the court shall have power to make such orders and take such other steps, as will promote the ends of justice between owners of such lands and said company.'

301 Mo. at 700, 257 S.W. at 444. *See also Center School District No. 58 of Jackson Co. v. Kenton*, 345 S.W.2d 120, 123 (Mo. 1961).

Application of this charter provision has given rise to the principle that, although a corporation might not be subject to damages upon abandonment, a court might condition the right to discontinue on "equitable terms, as the payment of costs and expenses." *Simpson v. City of Kansas City*, 111 Mo. 237, 247, 20 S.W. 38, 40 (1892). By 1897 the court recognized that this right contravened the "American Rule," and, if it were addressing a new question, it might not affirm an award of fees and costs, but, because it had such a longstanding history in this state and was so "eminently equitable and just," this right would be given continued application. *St. Louis R. Co. v. Southern Ry. Co.*, 138 Mo. 591, 596, 39 S.W. 471, 472 (1897). It held, "If a corporation has the right to discontinue its proceedings whenever the damages assessed are regarded as unrea-

sonable, or the results are otherwise unfavorable, the plainest principles of right require that such expense should be paid." *Id.*

In *Crestwood IV* the Supreme Court explained that the rationale for an award of attorney's fees and litigation expenses is based on:

"the broad principle of the inherent equity in the proposition that when the corporation, clothed with and exercising such extraordinary powers delegated by the government, in which it properly resides, entails expense upon the proprietor in protecting his private property rights and the proceeding is dismissed or abandoned, as a result of which he receives no compensation whatever, the corporation, on the plainest principles of justice, should reimburse him to the extent of such reasonable expenditure entailed by its voluntary act."

*Crestwood IV*, 998 S.W.2d at 38 (quoting Nifong v. Texas Empire Pipe Line Co., 225 Mo.App. 1134, 40 S.W.2d 522, 524 (1931) (quoting Kirn v. Cape Girardeau & C.R. Co., 124 Mo.App. 271, 276, 101 S.W. 673, 674 (1907))).

Although the Missouri Supreme Court clarified in Crestwood IV that *Lackland* applies to private condemnors other than railroads, it has declined to extend *Lackland* to public condemnors, such as cities and school districts. St. Louis Brewing Ass'n v. City of St. Louis, 168 Mo. 37, 46–47, 67 S.W. 563, 565–66 (1902); *Meadow Park*, 301 Mo. at 705–06, 257 S.W. at 446; *Kenton*, 345 S.W.2d at 125–26. In *Kenton* the court declined to allow landowners to recover attorney's fees and costs when the school district was proceeding under section 523.070, which did not have a provision like the charter in *Lackland*. 345 S.W.2d at 123–26.

The Missouri Supreme Court cases that have applied *Lackland* in railroad condem-

nation proceedings have recognized a condemnee's attorney's fees and, where requested, costs, as elements of damage upon abandonment. *See North Missouri Railroad Co. v. Reynal,* 25 Mo. 534 (1857); *Southern Ry.,* 138 Mo. at 596–97, 39 S.W. at 472. When used in these cases, "expenses" means the expenses of litigation. In *Southern Ry.,* the Missouri Supreme Court described the expenses as those "incurred in defending against the proceedings to condemn." 138 Mo. at 598, 39 S.W. at 472. But, in *Reynal,* the supreme court determined that expenses did not include a condemnee's damages arising from his decision to sell his tools, leave his carpentry business and move away after condemnation. 25 Mo. at 534–35. It held that "inconvenience and pecuniary loss attending the [condemnee's] course is not chargeable to the [condemnor]" because the condemnor had a right to discontinue. *Id.*

The courts of appeals have also approved the award of attorney's fees, costs, and expenses, when requested, when the condemnor is a private or quasi public corporation. *Leisse v. St. Louis & Iron Mountain Railroad Co.,* 2 Mo.App. 105, 113–14 (1876), *aff'd* 72 Mo. 561 (1880); *Gibbons v. Mo. Pac. Ry. Co.,* 40 Mo.App. 146, 151–52 (1890); *Sterrett v. Delmar Ave. & C. Ry. Co.,* 108 Mo.App. 650, 654, 84 S.W. 150, 151 (1904); *Kirn,* 124 Mo. App. at 275–76, 101 S.W. at 674–75; *St. Louis & G. Ry. Co. v. Cape Girardeau & Thebes B.T. Ry. Co.,* 126 Mo.App. 272, 278, 102 S.W. 1042, 1044 (1907); *Nifong,* 40 S.W.2d at 523. *Nifong* spoke of attorney's fees, costs, and expenses incurred by the landowner "in a condemnation suit that has been dismissed or discontinued." 40 S.W.2d at 523. In addition, *Sterrett* held that a plaintiff could recover the value of his time in preparing for and attending the condemnation proceedings. 108 Mo.App. at 654–55, 84 S.W. at 151. *Sterrett's* award of expenses in this category was

followed in *Kirn,* 124 Mo.App. at 277, 101 S.W. at 675.

In *Leisse* the court went beyond *Lackland* and held that recovery for loss of rent or suspension of business caused by the pending condemnation are recoverable. 2 Mo.App. at 113–14. The courts of appeals affirmed two judgments for damages for loss of use of business on the authority of *Leisse. Gibbons,* 40 Mo.App. at 147–48; Lohse v. Mo. Pac. Ry. Co., 44 Mo.App. 645, 650 (1891). Plaintiff did not claim this type of expense and, in any event, the Missouri Supreme Court eventually disapproved this aspect of *Leisse* after reviewing numerous cases and texts on eminent domain. *Simpson,* 111 Mo. at 246–47, 20 S.W. at 39–40; *see also Meadow Park,* 301 Mo. at 704–06, 257 S.W. at 446. It held that, in the absence of statute or specific wrongful conduct, such damages were not allowable when a lawful condemnation action was abandoned. *Id.,* 111 Mo. at 242–48, 20 S.W. at 40. After *Simpson* no Missouri court has affirmed an award of *Leisse*-type damages for loss of use upon abandonment of condemnation on the authority of *Leisse.*

We can conclude from this history that the damages authorized by *Lackland* were attorney's fees, costs and other litigation expenses incurred in defense of the condemnation action.

**B.** *Items of Damage Other Than Attorney's Fees*

Against this background, we examine the specific issues on appeal. Rather than proceed point by point with each brief in the order used by the parties, we have rearranged the ten points raised in the two appeals by category and subject matter, and address them accordingly. The first category contains those items of damage other than attorney's fees, which we dis-

cuss in this section B. We discuss all issues relating to attorney's fees in section C, which follows this section.

### 1. *Award of Any Damages*

We start with defendant's first point because it raises the broad question of whether the trial court erred in awarding any damages to plaintiff. Defendants argue that, because plaintiff continued to operate a profitable business on the property during the condemnation proceedings and profited from the sale of the property after abandonment, plaintiff did not suffer any loss from the condemnation or abandonment.

 We disagree with this argument. *Crestwood IV* clarified that plaintiff had an action for attorney's fees, costs and other reasonable expenses and losses incurred in defense of the subsequently abandoned condemnation action as set out in *Lackland*. These are damages that may be awarded irrespective of the financial consequences of the abandonment of the condemnation. Defendant's first point is denied.

### 2. *Denial of Mark Twain Bank Interest as Damages*

We turn next to plaintiff's first three points in which it challenges the trial court's entry of summary judgment in defendants' favor on the grounds that plaintiff could not recover the interest it paid to Mark Twain Bank, the lease termination payments, or the interest it paid to Mercantile Bank. In its first point, plaintiff contends that the trial court erred in determining that plaintiff was not entitled to recover the interest plaintiff paid to Mark Twain Bank on the $5.85 million loan it obtained, which was used in part to pay off its Mercantile Bank loan, because the condemnation continued to prevent the sale of the property after it obtained the Mark Twain loan. It argues that the portion of

the interest on the proceeds used to pay off the Mercantile Bank loan was a refinancing of the existing debt on the property and was a cost incurred when it was prevented from selling the property. It also argues that it was further damaged by the interest on the remainder of the loan proceeds, which were used to lend Wehrenberg funds for the General Cinema acquisition, because, had it been able to sell, it would have had its own cash to lend Wehrenberg and would not have had to take out a loan.

 No court has ever held that mortgage interest, much less interest on a loan to secure cash to lend to others, falls within the category of attorney's fees, costs, or other reasonable expenses and losses. Plaintiff's argument that it is entitled to recover interest on loans secured by the property under a "but for" theory of causation is an unjustified attempt to convert the act of abandonment, an action a condemnor has a right to take, into a wrongful act giving rise to a tort-based theory of liability. Ordinarily, if a litigant retains ownership of property and the benefits thereof, it cannot be "damaged" by the expenses of ownership, including mortgage interest. *See Aboussie v. Chicago Title Ins. Co.*, 949 S.W.2d 207, 209–10 (Mo.App. 1997). Plaintiff was fully compensated for its inability to sell the property to the maximum extent allowed by statute in the interest award, the purpose of which is to compensate a condemnee for its loss of ability to deal with its property freely. *American Topsoil*, 998 S.W.2d at 119; *Missouri & Iowa*, 910 S.W.2d at 266. In addition, we observe that plaintiff adduced evidence in the interest action of the Mark Twain interest to show it experienced monetary loss as a result of not being able to sell the property during condemnation. To allow plaintiff to recover interest on loans securing the property, in addition to

statutory interest, would result in a duplicative recovery for one loss, the practical deprivation of its ability to sell the property. The trial court did not err in denying recovery for this amount in the damage action. Plaintiff's first point is denied.

### 3. Lease Termination Payments

In its second point, plaintiff contends that the trial court erred in holding that it could not recover the $60,000 lease termination payments made to plaintiff's tenant Emmis Broadcasting in 1988 and 1989 because, by preventing a quick sale of the property, the condemnation caused the lease termination payments to have no value.

Plaintiff included the lease termination payments in a category of "sunk costs," or expenditures made to develop and prepare the property to sell to a willing buyer. The trial court denied recovery of all "sunk costs," which had been claimed in the amount of $98,594. However, on appeal, this is the only item of those costs that plaintiff challenges.

Plaintiff's witness, Charles Nicks, chief financial officer for the Fred Wehrenberg Circuit of Theatres, Inc., testified that the lease had to be terminated because a tenant would have impeded development of the entire site. Mr. Nicks also testified that the lease termination payments were "part of the cost of the land." The lease termination payments were made to Emmis Broadcasting so that plaintiff could either develop or sell the property, and were made several months before defendants initiated the condemnation action.

Plaintiff argues that these payments became losses to him because they turned out to be unnecessary in that the condemnation prevented the sale of the property, so that he could presumably have kept the tenant. This argument does not provide a basis for plaintiff to recover

the lease termination payments in the damage action. First, a lease termination payment is not an item of damages historically recognized in a common law claim for attorney's fees, costs, and other reasonable expenses and losses. Second, plaintiff's claim goes to injury purportedly suffered as a result of not being able to freely sell his property, an injury for which he was fully compensated by the statutory interest award. Further, by terminating the existing leases, plaintiff made the property more valuable. The increase in value was an incident of the plaintiff's ownership of the property. The absence of a lease was a factor that went into the $7.3 million value the condemnation commissioners awarded. Plaintiff received the value of the loss of use of this amount in the interest action.

The trial court did not err in not allowing plaintiff to recover the lease termination payments as an additional item of damages in the damage action. Plaintiff's point two is denied.

### 4. Elimination of Recovery of Mortgage Interest Award As a Result of Receipt of Contract Extension Payments

Plaintiff asserts in its third point that the trial court erred in its judgment by applying the $182,054 contract extension payments plaintiff received from Festival to offset and thereby eliminate any award of damages to plaintiff representing the mortgage interest it paid Mercantile Bank. Plaintiff argues that the trial court acted inconsistently in cutting off mortgage interest damages as of the date of refinancing in November, 1989, but then applying income received six months after this date to reduce the total mortgage interest damages to zero.

We do not reach the issue raised because the ultimate result of the trial court's action, which was to enter no judg-

ment for damages representing mortgage interest, was correct. For the reasons set out in our discussion of the Mark Twain interest, Section III. B. 2. of this opinion, mortgage interest on the property was not recoverable in the damage action.[3] Plaintiff's point three is denied.

### 5. *Real Estate Taxes*

We return to defendant's appeal. In their third point, defendants assert that the trial court erred in awarding plaintiff $90,058 for real estate taxes paid during the pendency of the condemnation. We agree.

■■■ Like mortgage interest, real estate taxes have never been recognized as one of the elements of damage in a common law damage claim for abandonment and, again like mortgage interest, real estate taxes are an expense incident to ownership to the property. *Aboussie*, 949 S.W.2d at 209–10. Plaintiff was fully compensated for its inability to sell the property by the statutory interest award. To allow plaintiff to recover real estate taxes, in addition to statutory interest, would result in a duplicative recovery for one loss, the practical deprivation of its ability to sell the property.

The trial court erred in awarding real estate taxes as part of the common law damages. Defendant's point three is granted.

### 6. *Prejudgment Interest*

In its fifth point, plaintiff, having withdrawn its contention that it was entitled to prejudgment interest on the attorney's fees in the underlying condemnation action, now maintains that the trial court erred in that part of its summary judgment that denied plaintiff's request for

prejudgment interest on its real estate tax and mortgage interest damages. Because we have determined that plaintiff is not entitled to an award of damages for real estate taxes and mortgage interest payments, it has no viable claim for prejudgment interest on those amounts. *See, e.g., Knopke v. Knopke,* 837 S.W.2d 907, 922 (Mo.App.1992). Plaintiff's point five is denied.

### C. *Attorney's Fee Awards*

Both parties raise issues with respect to the awards of attorney's fees. Defendants challenge the amount of the fee award in the underlying condemnation action. They also contend that the trial court erred in making any award for fees expended in the damage action. Plaintiff maintains that the trial court erred in reducing the fees awarded by a percentage of the award in the interest action, whereas defendants argue that the trial court should have offset the attorney's fee award by the entire amount of the judgment in the interest action. We consider each of these arguments below.

### 1. *Attorney's Fees in Underlying Condemnation Action*

In their fourth point, defendants assert that the trial court erred in awarding plaintiff all of the attorney's fees requested for defense of the underlying condemnation. Defendants specifically challenge the inclusion of fees charged by plaintiff's attorneys to defend Festival in the declaratory judgment action filed by the City, the fees incurred trying to develop the property with Festival, which had also been claimed as "sunk costs," and fees for duplication of work because two law firms were used.

---

**3.** These were the only damages the court offset with the contract extension payments. We do not remand for a determination if any other damages in the damage action should be offset by the contract extension payments because plaintiff's receipt of these payments was not relevant to the award of attorney's fees, etc. in the damage action.

At trial, an attorney testified for plaintiff as an expert witness on legal expenses. The expert witness testified to a lump sum of attorney's fees for work performed by attorney Daniel Rabbitt and his law firms and by the law firm of Nations & Mueller that the expert witness determined were necessary in terms of the defense of the litigation and "reasonable in the amounts."

In its judgment, the trial court found that the expert witness was a credible witness, that the fees incurred in the underlying condemnation were necessary and reasonable to defend that action, and that the fees were reasonable and necessary even though plaintiff used multiple law firms and paid for the defense of the declaratory judgment action brought by the City.

### a. Fees for Declaratory Judgment Action and Fees for Developing Property

The expert witness included in the lump sum figure the legal fees claimed by Mr. Rabbitt and his law firms and by Nations & Mueller to defend the declaratory judgment action brought by the City against Festival. He testified that he discussed the nature of the declaratory judgment litigation with Mr. Rabbitt and Mr. Mueller, but he did not testify to the work involved or performed in that action. He did not review the declaratory judgment pleadings himself or calculate from the lawyers' billing invoices how much time was separately devoted to the declaratory judgment action. The expert witness testified that he included these fees in the lump sum figure because Mr. Rabbitt explained to him, to his satisfaction, that the fees incurred in the declaratory judgment action "were necessary in order to defend the underlying condemnation action." He testified that Mr. Rabbitt and Mr. Mueller each told him that those fees would not have been incurred but for the underlying condemnation action.

"[A]n expert's opinion must be based either upon facts within the expert's personal knowledge and observations or upon facts supported by competent evidence." *Coppedge v. Mo. Hwy. & Transp. Com'n*, 809 S.W.2d 164, 167 (Mo.App.1991). The determination of whether an opinion is supported by sufficient facts is a question of law. Koontz v. Ferber, 870 S.W.2d 885, 893 (Mo.App.1993).

Although the trial court found the expert witness credible, the issue here is not controlled by credibility. The expert witness's conclusion that fees expended to litigate an action between two other parties were to be included as fees expended to defend plaintiff in the underlying condemnation do not support the trial court's judgment for two reasons. First, the testimony was based on the conclusions of the attorneys who performed the services and not upon an independent analysis of the facts underlying those conclusions. More importantly, this was a legal conclusion that invaded the province of the court. *See D.L.H. v. H.T.H.*, 780 S.W.2d 104, 106 (Mo.App.1989); *M—D— v. C—D—*, 691 S.W.2d 406, 408 (Mo.App.1985). Whether plaintiff could recover the fees the attorneys incurred defending Festival in the declaratory judgment action was a question of law for the court. *See Kreuter*, 929 S.W.2d at 316. *Lackland* limits counsel fees to those expended by the condemnee in defense of the condemnation case, at trial or on appeal. 25 Mo. at 534. The work these law firms did to defend *Festival* in the declaratory judgment action filed against it by the *City* is not work performed for *plaintiff* to defend *plaintiff* in the condemnation action brought by *Commons*. As a matter of law, the time these attorneys spent on the declaratory judgment case between the City and Festival should not have been included in the

award of attorney's fees to defend the condemnation action on behalf of plaintiff.

### b. *Fees for Developing the Property*

The total amount of legal fees requested for Nations & Mueller also included work that that firm performed in developing the property. In its answers to interrogatories, filed as a trial exhibit, plaintiff listed fees paid to Nations & Mueller in the amounts of $83,461, $62,247, $20,915, and $4,066 as "specific amounts claimed as legal defense damages." It footnoted each of these amounts as follows:

> Note: All Nations & Mueller legal expenses claimable as damages are reported in the legal defense category of damages *although some of these expenses are claimable in damages as sunk development costs.*

(emphasis added). Plaintiff defined sunk costs as "costs incurred toward the development by 66, Inc. of the property" including "a portion of the Nations & Mueller legal bills." At trial, plaintiff also included each of these amounts in its exhibit entitled, "Legal fees incurred in condemnation action." The expert witness testified that the total amount of fees requested, $278,811, which included all of the Nations & Mueller fees, was reasonable and necessary. However, no witness, including plaintiff's expert witness, separated out from the Nations & Mueller fees those fees that were expended for development of the property, as opposed to defense of the condemnation. The expert witness's testimony did not separately address this aspect of the Nations & Mueller fees, and he did not give a specific opinion on the inclusion of the fees incurred for development of the property.

■ The fees incurred in developing the property for sale should not have been awarded as part of the fees expended for defense of the condemnation. These fees were, as plaintiff itself described them, part of the "sunk costs" of developing the property for sale. For the reasons set out in Section III. B. 3. of this opinion, discussing the lease termination payments, these fees were not recoverable in this lawsuit.

### c. *Overlapping Fees*

■ The expert witness also testified, based on his conversations with Mr. Mueller and Mr. Rabbitt, as well as his review of task and time entries in billing documents, that the work performed by Nations & Mueller was necessary to defend the underlying condemnation even though that firm was not counsel of record. There was substantial evidence to support the trial court's finding that Nations & Mueller performed legal work to assist in the defense of the condemnation even though it was not counsel of record. The expert witness testified that, according to his discussions with Terry Mueller and his review of the billing entries, Nations & Mueller worked with Mr. Rabbitt on the underlying condemnation performing legal research, reviewing and revising pleadings, and communicating by telephone and written correspondence. Mr. Mueller also testified in his deposition about the extent of services provided to plaintiff. Defense counsel questioned Mr. Mueller extensively on the billing entries submitted by Nations & Mueller. Mr. Mueller testified that his firm was involved in numerous phone conversations or conferences with Mr. Krueger and Mr. Rabbitt, prepared a chronology for the condemnation trial, revised briefs for submission in the condemnation appeal, and attempted to negotiate a settlement with defendants.

The trial court did not abuse its discretion in awarding those fees paid to Nations & Mueller for work done in *defense* of the condemnation action.

### d. *Conclusion*

Point four is denied in part and granted in part. The award of attorney's fees to defend the underlying condemnation action is reversed and remanded to the trial court to determine the amount of attorney's fees expended to defend Festival in the declaratory judgment action brought by the City and to develop the property, and to reduce its award of attorney's fees for defense of the underlying condemnation by that amount.

### 2. *Attorney's Fees in Damage Action*

In their second point defendants contend that the trial court erred in awarding plaintiffs the attorney's fees incurred in the damage action because none of the exceptions to the American Rule apply. We agree.

In its summary judgment order, the trial court concluded that plaintiff could recover its attorney's fees in the damage action under "either or both" the collateral litigation or balancing of benefits exceptions to the American Rule. In its final judgment, the trial court awarded plaintiff $136,507 as damages for legal fees it incurred in the damage action.

 Missouri follows the "American Rule" which generally provides that, absent statutory authorization or contractual agreement, with few exceptions, each party must bear the expense of its attorney's fees. *David Ranken, Jr. Tech. Inst. v. Boykins,* 816 S.W.2d 189, 193 (Mo. banc 1991) (overruled on other grounds); *City of Cottleville v. St. Charles County,* 91 S.W.3d 148, 150 (Mo.App.2002). The exceptions are limited to fees expended to defend "collateral litigation," and to those cases in which a court of equity finds it necessary to award fees to "balance the benefits" where very unusual or special circumstances have been shown. *Ranken,* 816 S.W.2d at 193; *Cottleville,* 91 S.W.3d at 150; *see also Mayor, Councilmen &*

*Citizens, Etc. v. Beard,* 636 S.W.2d 330, 331 (Mo. banc 1982).

#### a. *Collateral Litigation*

 The collateral litigation exception allows a plaintiff, in a case alleging a breach of duty against a defendant, to recover the attorney's fees plaintiff expended to *defend* a different and collateral action brought by a third party against the plaintiff, when the collateral action was caused by the defendant's breach of duty. *Id.* The attorney's fees expended in the collateral litigation are items of damage caused by the defendant's breach of duty. *Id.* "Unlike other exceptions, the collateral litigation exception does not allow the party to recover its fees expended in the action in which the judgment is being rendered, but rather it allows a party to recover its fees expended in collateral litigation." *Cottleville,* 91 S.W.3d at 150. As in *Cottleville,* in this case the attorney's fees sought are those that plaintiff incurred in litigating its claims against defendants in the damage action; these were not attorney's fees that defendants incurred litigating with a third party as a result of a breach of duty that defendants owed plaintiff. The "collateral litigation" exception does not permit plaintiff to recover the fees it expended to litigate this case. *Id.*

#### b. *Balancing of Benefits*

 Another exception to the "American Rule" is that attorney's fees may, on rare occasions, be recovered when a court of equity finds it necessary to balance benefits. *See Arnold v. Edelman,* 392 S.W.2d 231, 239 (Mo.1965) (quoting *Duncan v. Townsend,* 325 S.W.2d 67, 71 (Mo.App.1959)); *Mayor, Councilmen,* 636 S.W.2d at 331. In this case plaintiff was seeking damages under a common law theory; it did not invoke the equitable jurisdiction of the trial court. In this situation "the equitable concept of 'balanc[ing] bene-

fits' is not implicated." *Memco, Inc. v. Chronister,* 27 S.W.3d 871, 877–78 (Mo. App.2000).

c. *Claimed Exception for Condemnation Abandonment Cases*

■ Plaintiff also responds that condemnation abandonment cases constitute another exception to the American Rule, citing *Lackland,* 25 Mo. at 534. In *Lackland* the court held, "if the company is permitted to discontinue, all the costs and expenses of the land owner should be paid by the company. This will embrace the costs of the case and counsel fees, both *here* and in the court where the case was tried." 25 Mo. at 534 (emphasis added). Plaintiff argues that, when the court used the word "here," it was referring to all fees incurred from both the damage action and underlying condemnation action. We disagree. The court in *Lackland* was deciding an appeal from the original condemnation proceeding, and used "here" to refer to the appeal from the original condemnation proceeding.

Plaintiff also responds that, as a matter of policy, its attorney's fees in the abandonment action should be considered part of its damages because the abandonment action was caused by defendants' "breach of duty." As previously set out, abandonment does not constitute a breach of duty; rather, it is a right sanctioned by statute and rule. *Washington U. Medical,* 654 S.W.2d at 194. Further, the American Rule does not allow the recovery of attorney's fees on the ground that the litigation was caused by a "breach of duty." "The rule at common law in actions at law is that the successful litigant is not automatically entitled to an attorney's fee because the justice of his claim has been established." *Ranken,* 816 S.W.2d at 193.

The trial court misapplied the law in awarding plaintiff as an item of damages the attorneys' fees it expended to prose-

cute the damage action. Defendant's point two is granted.

3. *Reduction of Attorney's Fees Award by Portion of Statutory Interest Award*

■ Plaintiff asserts in its fourth point that the trial court erred in its judgment when it reduced the attorney's fees awarded in the damage action by $112,764 of the statutory interest awarded in the interest action on the grounds that these were overlapping awards. We agree. The Supreme Court clearly indicated that attorney's fees and costs were different from and in addition to the statutory interest damages. *Crestwood IV,* 998 S.W.2d at 39–40; *McDaniel,* 513 S.W.2d at 449. Attorney's fees were therefore not a proper item of damage in the interest action. Further, plaintiff did not introduce any evidence of the nature or amount of its attorney's fees in the interest action, and the trial court's judgment in that action does not mention attorney's fees. The trial court in this case erred in attributing a part of the interest award to a recovery for attorney's fees and in reducing the judgment in the damage action by that amount. Plaintiff's point four is granted.

4. *Offset of Damages*

For their fifth point defendants claim that the trial court erred in failing to offset the damages in the damage action by the entire amount of the judgment in the interest action. They claim that the only compensable award in the interest action was for attorney's fees. As the discussion of the previous point set out, attorney's fees were not awarded in the interest action. Point five is denied.

*Conclusion*

The judgment of the trial court is reversed with respect to the award of $90,058 representing real estate taxes and the award of $136,507 representing attor-

ney's fees in the damage action. We also reverse with respect to the trial court's reduction of damages by $112,764 and order that that amount be reinstated into the judgment. Further, we reverse that part of the award of attorney's fees for defense of the condemnation action that represents fees charged in the declaratory judgment action and for land development and remand to the trial court to determine the amount of those fees and deduct them from the judgment. In all other respects, the judgment of the trial court is affirmed.

GARY M. GAERTNER, Sr., J., and PAUL J. SIMON, Sr. J. concur.